**DAVID M.C. PETERSON**
California State Bar No. 254498
**MICHELLE BETANCOURT**
California State Bar No. 215035
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
Telephone: (619) 234-8467
david_peterson@fd.org
michelle_betancourt@fd.org

Attorneys for Mr. Haynes

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 08cr0366-DMS |
| Plaintiff, ) | DATE:  June 13, 2008 |
| ) | TIME:  1:30 p.m. |
| v. ) | |
| ) | **POINTS AND AUTHORITIES IN SUPPORT OF** |
| JAMES HAYNES, III, ) | **MR. HAYNES MOTIONS IN LIMINE** |
| Defendant. ) | |

TO: KAREN HEWITT, UNITED STATES ATTORNEY;
DAVID LESHNER, ASSISTANT UNITED STATES ATTORNEY; AND
AARON CLARK, ASSISTANT UNITED STATES ATTORNEY:

**I.**

**STATEMENT OF FACTS**

Mr. Haynes hereby incorporates by reference the statement of facts set forth in previous motions. However, relevant to this motion are the facts that on March 14, 2008, Mr. Haynes made a formal request for discovery related to two TECS hits that appeared. Only on May 22, 2008, over two months later did the government provided notice of its intent to introduce 404(b) evidence. On May 23, 2008, it provided a single document related to a November, 2007 apprehension at a checkpoint. Again on May 30, 2008, the government provided notice of intent to introduce separate 404(b) evidence. It has not, to date, provided any information in regards to this 404(b) evidence.

//

## II.

## THIS COURT SHOULD PRECLUDE DETAILS OF THE COMPARTMENT CONTAINING THE MATERIAL WITNESS

Under Federal Rules of Evidence 401, 402, and 403, Mr. Haynes moves to exclude any details about the compartment in which the material witness was hidden. Mr. Haynes also moves to exclude any testimony regarding the conditions in the compartment, as this information is irrelevant. The size, nature and temperature of this compartment might be an appropriate sentencing issue in some cases. In no way, however, do the size, nature, and conditions of the compartment address an element of the crime; nor does it rebut any possible defense at trial. It is irrelevant to any disputed issue in this case.

In contrast, this information is incredibly prejudicial. Details of this compartment serve only to inflame and prejudice the jury, and could lead a jury to seek to punish Mr. Haynes regardless of fault. Under Rules 401, 402, and 403, this evidence should be excluded at trial. Moreover, exclusion of this evidence will further secure Mr. Haynes' Fifth and Sixth Amendment rights to a reliable jury verdict, and will eliminate the risks of conviction based upon consideration of arbitrary and irrelevant evidence in violation of the Fifth Amendment.

The evidence on this point should be limited to testimony that the material witness was discovered in a non-factory compartment in the cargo area of the Pathfinder. Any other evidence regarding the conditions inside the compartment should be excluded. See Fed. R. Evid. 401; 402; 403. See also United States v. Unruh, 855 F.2d 1363, 1377 (9th Cir. 1987) (admission of evidence with minimal probative value which could cause jurors to decide case on legally irrelevant grounds could be abuse of discretion); United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1992) (government must articulate basis for admissibility).

## III.

## THIS COURT SHOULD PRECLUDE THE GOVERNMENT FROM PRESENTING HEARSAY STATEMENTS ABOUT SMUGGLING ARRANGEMENTS UNDER *CRAWFORD*

The Confrontation Clause forbids the use of hearsay against a criminal defendant at trial, if the defendant is not afforded the right to confrontation. See Crawford v. Washington, 124 S. Ct. 1354 (2004). Under Federal Rule of Evidence 802, hearsay statements are inadmissible unless one or more hearsay exceptions apply. When a statement involves multiple levels of hearsay, each level must be independently admissible

for the statement to come into evidence. Fed. R. Evid. 805.

## IV.

### THIS COURT SHOULD EXCLUDE ANY EXPERT WITNESSES OFFERED BY THE GOVERNMENT

Federal Rule of Criminal Procedure 16(a)(1)(E) mandates that "[a]t the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial . . .. The summary provided under this subdivision shall describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications." The obligation to provide this material is ongoing, continuing prior to and during trial. Fed. R. Crim. P. 16(c). When a party fails to comply with the discovery rules set forth in Rule 16, exclusion is a proper remedy. Fed. R. Crim. P. 16(d)(2). See also Advisory Committee Notes to 1997 Amendment (asserting that "[u]nder rule 16(a)(1)(E), as amended in 1993, the defense is entitled to disclosure of certain information about expert witnesses which the government intends to call during the trial" (emphasis added).

Thus far, the government has given no notice of any expert witness testimony. If the government seeks to offer expert testimony without (1) timely notifying the defense of the expert and his or her qualifications; (2) providing a summary of the expected testimony; and (3) providing a summary of the bases of the expert's opinion, this Court should exclude such witnesses from testifying at trial. If the government has not given expert notice by the motions in limine hearing date, Mr. Haynes respectfully requests that this Court grant a motion in limine to give effect to the discovery requirements of Rule 16, and to afford the accused the opportunity to prepare his defense in this case.

Mr. Haynes specifically asks that this Court preclude any government witness from testifying regarding the temperature or conditions inside of the compartment. Such testimony, which would amount to an expert opinion, should be precluded unless the government complies with its expert disclosure requirements under Rule 16 and Mr. Haynes has the opportunity to voir dire the proffered expert on the issue.

## V.

### THE COURT SHOULD NOT SEND THE INDICTMENT INTO THE JURY ROOM DURING DELIBERATIONS

In the commentary to Model Instruction 3.2.1, "Charge Against Defendant Not Evidence," the Committee on Model Jury Instructions, in the Ninth Circuit Manual of Model Jury Instructions, strongly recommends that the indictment not be sent into the jury room during deliberations. The commentary observed that neither the Federal Rules of Criminal Procedure, nor case law, require sending a copy of the indictment to the jury room because the indictment is not evidence.

Mr. Haynes urges this Court to follow the Committee's guidance. The language in the instant indictment "tracks" the language of the charged statutes. Accordingly, it is probable that jurors will be persuaded by the similarities alleged in the indictment returned by the grand jury and the elements which must be proven in the charged statutes. Furthermore, the indictment recites that "the grand jury charges," and this could persuade those jurors without experience with the grand jury system that another jury had already found Mr. Haynes guilty. Mr. Haynes also requests that this Court caution the jury that the indictment is not evidence. See United States v. Utz, 886 F.2d 1148, 1151-1152 (9th Cir. 1989).

## VI.

### THIS COURT SHOULD ALLOW ATTORNEY-CONDUCTED VOIR-DIRE

Pursuant to Rule 24(a), Federal Rules of Criminal Procedure, to provide effective assistance of counsel and to exercise Mr. Haynes' right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury.

## VII.

### THIS COURT SHOULD ORDER PRODUCTION OF GRAND JURY TRANSCRIPTS

The Court should order production of grand jury transcripts when the defense can show a particularized need. The particularized need present in this case is that a witness may have testified before the grand jury, who will likely testify at Mr. Haynes' trial. The government must produce a transcript of a witness' testimony before the grand jury following the direct examination of a witness at trial. 18 U.S.C. § 3500; Dennis v. United States, 384 U.S. 855 (1966); Fed. R. Crim. 26.2(f)(3). The defense requests that the government make such transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any need for recess in the proceedings for defense counsel to examine the statements pursuant to Fed. R. Crim. P. 26.2(d).

1  Additionally, Mr. Haynes moves for the production of grand jury transcripts, even if the grand jury
2  witness *does not* testify at trial. If the government's grand jury witness was not the case agent in this case, that
3  witness likely testified based upon information provided by other agents. The government has, thus, adopted
4  the witness' grand jury testimony by "manifest[ing] an adoption or belief in its truth." See Fed. R. Evid.
5  801(d)(2)(B). The grand jury testimony also constitutes an admission "by a person authorized by the party
6  to make a statement concerning the subject matter," see Fed. R. Evid. 801(d)(2)(C), and constitutes
7  "statement[s] by the party's agent or servant concerning a matter within the scope of the agency or
8  employment, made during the existence of the relationship," see Fed. R. Evid. 801(d)(2)(D).

9  Furthermore, to the extent that any of the grand jury testimony in this case is in any way inconsistent with
10 the testimony adduced at trial, the grand jury testimony constitutes exculpatory impeachment evidence. See
11 Giglio v. United States, 405 U.S. 150 (1972). As discussed above, such evidence would be admissible as an
12 adoptive admission pursuant to Rule 801(d)(2). At a minimum, this Court should conduct an *in camera*
13 review of the grand jury testimony and order the transcript produced if it contains any testimony that might
14 be Brady material, or otherwise subject to production, as explained above.

15                                **VIII.**
16 **THIS COURT SHOULD ORDER PRODUCTION OF JENCKS MATERIALS PRIOR TO TRIAL**

17 Mr. Haynes requests that this court order production of Jencks materials prior to trial. Under Federal
18 Rule of Criminal Procedure 26.2, Mr. Haynes will be entitled to any statement of the witness in its possession
19 that relates to the subject matter of the witness's testimony. Fed.R.Crim.P. 26.2(a).

20 Mr. Haynes specifically requests that the court order production prior to trial in order to ensure that no
21 recess is necessary to (a) examine the statement or (b) prepare for its use. Fed.R.Crim.P. 26.2(d). Preparation
22 for use may require further investigation and a lengthy recess during the course of trial. In order to ensure an
23 efficient trial and no waste of the court or the jury's time, Mr. Haynes respectfully requests that this court order
24 the government to turn over all Jencks materials one week before trial.

25                                **IX.**
26 **THIS COURT SHOULD ORDER PRODUCTION OF AS-YET UNPRODUCED JENCKS MATERIALS FROM THE EVIDENTIARY HEARING**
27
28 At the May 30, 2008 evidentiary hearing, Agent Vasquez stated that he had written an I-826 form

1 regarding his field arrest and interrogation of material witness Jesus Nava-Montenegro. The government
2 stated that it was not aware of this and did not produce it at the hearing. This I-826 was and remains Jencks
3 that should have been disclosed at the hearing. Because it could have been used as impeachment at the
4 hearing, and that impeachment would have been used at trial, Mr. Haynes respectfully requests this court to
5 order the government to produce the unproduced Jencks.

6       As an initial matter, Jencks applies at suppression hearings, and any argument to the contrary by the
7 government is frivolous. See Fed.R.Crim.P. 26.2(g), entitled "Scope" ("This rule applies at trial, [and] at a
8 suppression hearing under Rule 12 . . . ).

9       Further, the I-826 clearly falls within the materials contemplated under the Jencks Act. It is a "written
10 statement" made and signed by Officer Vasquez. Fed.R.Crim.P. 26.2(f). It is of no matter that the statement
11 may include within it a report of statements made by another individual. The form was filled out and signed
12 by Officer Vasquez, and thus it is his statement.

13       The Ninth Circuit, as of 1975, held that "[i]t is now well established that individual 'notes and reports'
14 of agents of the Government who testify for the Government, made in the course of a criminal investigation,
15 are the proper subject of inquiry and may be subject to production under the Jencks Act, 18 U.S.C. § 3500."
16 United States v. Johnson, 521 F.2d 1318 (9th Cir. 1975). Thirty-three years later, this proposition remains
17 good law. See, e.g., United States v. Cedano-Arellano, 332 F.3d 568 (9th Cir. 2003) ("This court has held that
18 reports of government agents made in the course of criminal investigation are subject to production under the
19 Jencks Act if the government agent testifies") (internal citations omitted).

20       Further, as of March 14, 2008, Mr. Haynes had requested preservation of all notes taken by agents, which
21 would obviously include reports made by agents. If the government continues to claim that it does not know
22 where the I-826 written by Agent Vasquez is, Mr. Haynes respectfully requests this court to order the
23 government to locate the I-826 of Agent Vasquez. As an initial matter, since the government is aware of its
24 existence, it is required to review it to determine whether it is Brady material. Further, the government cannot
25 attempt to put Jencks out of the reach of defense counsel by failing or refusing to take the necessary efforts
26 to locate Jencks. If the government cannot produce what is clearly Jencks and possibly Brady by the time of
27 trial, Mr. Haynes will request that Agent Vasquez be precluded from testifying to his interaction with Mr.
28 Nava-Montenegro, since the government will have destroyed or put out of reach Jencks and possible Brady

1  without reviewing it beforehand.

2  Finally, given that the timing of the field statements was at issue in the evidentiary hearing, and will
3  likely be at issue in trial, the report is impeachment material and Brady. The I-826 will contain a statement
4  as to the time it was filled out. This is a statement by Agent Vasquez as to the time around which he
5  conducted the field questioning, and should be provided. Of course, the report in its entirety is Jencks.
6  Cedano-Arellano, 332 F.3d 568. As such, it should be produced.

7  //
8  //
9  //

## X.

### THIS COURT SHOULD EXCLUDE EVIDENCE OF DEFENDANT'S DEMEANOR AND THE "IMPRESSIONS" OF THE GOVERNMENT WITNESSES

Although the government has not provided any discovery of nervousness, the government witnesses may opine that Mr. Haynes was nervous when he interacted with agents, or otherwise comment on his alleged demeanor. The defense files this motion to prevent the government's introducing this demeanor evidence at trial.

**A.  Such Evidence Should Be Precluded Under Federal Rule of Evidence 403 Because Testimony That Someone Was "Nervous" Is Irrelevant and Overly Prejudicial.**

Rule 403 allows the Court to exclude relevant evidence if the "[p]robative value is substantially outweighed by danger of unfair prejudice." Lay witness testimony regarding nervousness, absent some prior knowledge of the defendant, has minimal, if any, relevance. United States v. Wald, 216 F.3d 1222, 1227 (10th Cir.2000) (*en banc*) (evidence of nervousness "is of limited significance"[,] "particularly when [the agent] had no prior acquaintance with the [defendant]."); United States v. Fernandez, 18 F.3d 874, 879 (10th Cir. 1994) ("We have repeatedly held that nervousness is of limited significance in determining reasonable suspicion and that the government's repetitive reliance on the nervousness . . . must be treated with caution"); see also Gall v. Parker, 231 F.3d 265, 292 (6th Cir. 2000) (testimony that Gall seemed "nice [and] normal" and "not nervous" error because—"we have long been skeptical of such lay testimony"); United States v. Burks, 547 F.2d 968, 970 (6th Cir. 1976) (stating that lay testimony that defendant did not appear "abnormal" by persons "who had very limited opportunity to observe" him had little value), rev'd on other grounds, 437 U.S. 1, 98

S. Ct. 2141 (1978); <u>United States v. Smith</u>, 437 F.2d 538, 540-41 (6th Cir. 1970) (lay testimony as to mental state lacks probative value when a witness' "direct knowledge of the defendant is brief and superficial.").[1]

In reversing a trial court's decision, the Tenth Circuit, in <u>Fernandez</u>, expressly noted, that: "[t]he lower court's heavy reliance on nervousness as an important factor establishing reasonable suspicion is even more troublesome given the complete lack of evidence in the record that [the police officer] had any prior knowledge of Fernandez . . .." 18 F.3d at 879.

These cases demonstrate that the judiciary, in general, and the Ninth Circuit, specifically, places little to no weight upon nervousness in making particular fact-based rulings under the lesser burdens of proof than the beyond a reasonable doubt standard applicable at trial. See, e.g., <u>United States v. Chavez-Valenzuela</u>, 268 F.3d 719 (9th Cir. 2001) ("[N]ervousness during a traffic stop—even . . . extreme nervousness . . . in the absence of other particularized, objective factors, does not support a reasonable suspicion of criminal activity . . .."). For example, in <u>Chavez-Valenzuela</u>, <u>Wald</u> and <u>Fernandez</u>, nervousness was considered to be of little to no probative value in a probable cause/reasonable suspicion context where evidentiary standards are relaxed and *where there is no need to consider the prejudicial impact of such evidence.* <u>Id.</u>; <u>Wald</u>, 216 F.3d at 1227; <u>Fernandez</u>, 18 F.3d at 879.

The reasoning underlying the minimal significance accorded to "nervousness" is that courts recognize that "nervousness" has both an innocent and a guilty explanation because people confronted with law enforcement often exhibit signs of nervousness, without having done anything wrong. See, e.g., <u>Chavez-Valenzuela</u>, 268 F.3d at 725 ("Encounters with police are necessarily stressful for law-abiders and criminals alike"); <u>United States v. Fuentes-Cariaga</u>, 209 F.3d 1140, 1142 (9th Cir. 2000) (recognizing that "drivers stopped at the border (or anywhere else) can be nervous for many reasons, one being a natural unease when confronted by an authority figure and another being fear of getting caught with contraband the person knows he is carrying"); <u>accord</u> <u>Wald</u>, 208 F.3d at 907 (it is not uncommon for most citizens, even innocent ones, to exhibit signs of "innocuous" nervousness when confronted by law enforcement); <u>United States v. Wood</u>, 106

---

[1] In both <u>Gall</u> and <u>Smith</u>, mental state was the defense, and it was deemed error to have lay witnesses, without prior knowledge of the defendant, opine that he appeared "not nervous," <u>Gall</u>, 231 F.3d at 292, or that "he did not appear abnormal," <u>Smith</u>, 437 F.2d at 540. Similarly, here, where a distinct mental state, knowledge, is the determinative issue, permitting witnesses without expertise and with no prior knowledge of Mr. Haynes to testify to the converse—that is, that he *was* nervous—is equally erroneous.

F.3d 942, 947 (10th Cir. 1997) ("It is certainly not uncommon for most citizens—whether innocent or guilty—to exhibit signs of nervousness when confronted by a law enforcement officer."); Fernandez, 18 F.3d at 879 (same); United States v. Diaz-Carreon, 915 F.2d 951, 954 (5th Cir. 1990) ("Nervousness, however, is 'a normal reaction to circumstances which one does not understand.' In the absence of facts suggesting that the defendant's nervousness or anxiety derives from an underlying consciousness of criminal behavior, evidence of nervousness is insufficient to support a finding of guilty knowledge");[2] United States v. Millan-Diaz, 975 F.2d 720, 722 (10th Cir. 1992) (same); United States v. Grant, 920 F.2d 376, 386 (6th Cir. 1990) ("[n]ervousness is entirely consistent with innocent behavior, especially at an airport where a traveler may be anticipating a long-awaited rendezvous with friends or family"); United States v. Andrews, 600 F.2d 563, 566, n.4 (6th Cir.1979) (noting inconsistent rationales taken by government in explaining nervousness).

In determining what can properly be considered in making reasonable suspicion/probable cause determinations, it is improper for district courts to rely upon factors that lead to a "heads I win, tails you lose" result for the prosecution. Gonzalez-Rivera v. INS, 22 F.3d 1441, 1447 (9th Cir. 1994) (noting that point with respect to a driver's avoidance of eye contact with law enforcement the government argues that whether the driver made eye contact or avoided it both are signs of guilt); see also United States v. Lopez, 564 F.2d 710 (5th Cir. 1977) (where a factor and its opposite can both be used to justify a stop, the court should not give weight to either factor.). Nervousness is precisely such a factor, as recognized by the court in Andrews, 600 F.2d at 566, n.4, which discussed the fact that the government argues in some cases that "nervousness" indicates guilty knowledge, while in others that its absence indicates the guilty knowledge of the calm and collected criminal. Since it is inappropriate for courts to consider such a factor in a mere probable cause calculus, concomitantly, a jury should not consider it at a far more important event, such as a trial[3]. Indeed,

---

[2] In Diaz-Carreon, the Fifth Circuit held that the "nervousness" was linked to consciousness of guilt, but only because, in that case, "*before being told that agents had discovered marijuana in the pickup truck*, Diaz-Carreon volunteered, 'If the truck is loaded, I didn't know about it.'" 915 F.2d at 954 (emphasis in original). Here, no such link between any amorphous "nervous" behavior and consciousness of guilt exists.

[3] In the suppression context, courts are precluded from considering certain factors and, as a matter of law, cannot rely upon them in finding probable cause or reasonable suspicion, such as race or ethnicity, United States v. Montero-Camargo, 208 F.3d 1122, 1131-32 (9th Cir. 2000) (*en banc*). Because of its limited probative value and the equivalent "guilty" and "innocent" explanation, courts indicate that "nervousness" also should be accorded little to no consideration. While a factor such as race is not permitted to be the subject

1  we expect our judges to be able to put aside undue prejudice when the law recognizes that jurors cannot do
2  the same.
3      It is well-established that jurors will assign undue weight to a law enforcement officer's testimony that
4  an individual was "nervous" and equate nervous behavior with suspicious behavior.  See, e.g., United States
5  v. Gutierrez, 995 F.2d 169, 172 (9th Cir. 1993) (testimony of law enforcement officers "'often carries an aura
6  of special reliability and trustworthiness,'") (quoting United States v. Espinosa, 827 F.2d 604, 613 (9th Cir.
7  1987)).  It is also true that, as is previously recognized, testimony that someone is "nervous" in the presence
8  of law enforcement, is ambiguous.  For these reasons, evidence that someone was "nervous" should fall in the
9  same category as evidence that an individual remained silent when confronted with law enforcement
10 accusations.  That silence evidence, apart from any constitutional protection, is also inadmissible pursuant to
11 Fed. R. of Evid. 403.  United States v. Hale, 422 U.S. 171 (1975).  Thus, any slight probative value which
12 could exist is insufficient to justify its admission.  All told, any proposed testimony that Mr. Haynes displayed
13 signs of nervousness is irrelevant to the issue at hand and should be excluded under Rule 403 as being
14 substantially more prejudicial than probative.

**B.  Admission of Nervousness Testimony Violates Rules 701 & 704(b).**

16     Admission of demeanor evidence should be excluded if it is couched in terms of a law enforcement
17 witness' personal opinion about Mr. Haynes' behavior, i.e., "he was nervous."  An inspector or agent's
18 personal opinion is irrelevant, and such opinion testimony, based on no prior knowledge of the defendant and
19 upon a very limited observation opportunity, violates Rule 701.  Rule 701 provides that a lay witness can only
20 testify to opinions or inferences that are (a) rationally based on the perception of the witness, (b) helpful to a
21 clear understanding of the witness' testimony or to the determination of a fact in issue, and (c) not based on
22 scientific, technical, or other specialized knowledge within the scope of Rule 702.  In Gonzalez-Rivera v. INS,
23 22 F.3d 1441 (9th Cir. 1994), the Ninth Circuit held that an INS agent's testimony at a suppression hearing
24 that an individual was nervous must be disregarded because it was not based upon "reliable, objective
25 evidence."  Id. at 1447.  There, when explored, the basis for the agent's testimony was that the individual

---

of testimony indicating guilty knowledge at a trial for other reasons, one such reason, *i.e*, that it has no relevance for purposes of ascertaining guilty knowledge, applies equally to nervousness.  Just as race would not be a permissible subject of testimony at trial, neither should testimony about nervousness be admitted.

appeared to have a "dry mouth." The court stated that, absent reliable, objective testimony that people who are nervous have a dry mouth, as opposed to just being thirsty, this inference was nothing more than "subjective feelings [which] do [] not provide any rational basis for separating out the illegal aliens from the American citizens and legal aliens." Id. Likewise, possible testimony in the instant case that Mr. Haynes was "nervous" is nothing more than a subjective judgment based upon no prior knowledge of him. Accordingly, the jury cannot consider it.

//

//

//

## XI.

## THIS COURT SHOULD ALLOW EACH JUROR TO HAVE A SEPARATE COPY OF THE APPROVED JURY INSTRUCTIONS

Juries consist of lay people, who are required to follow the law. Their responsibility becomes more difficult when all twelve jurors have access to only one copy of the instructions. Often, each juror does not have an opportunity to even read or understand the critical instructions. Consequently, jurors fail to understand the government's burden of proving a case beyond a reasonable doubt and the defendant's constitutional right not to testify and present evidence in his own defense.

In this case, there are numerous elements the government must prove to convict Mr. Haynes. Although this Court will instruct the jury on each of these elements, each juror also should be provided a written copy of the jury instructions, so that each juror may properly, effectively, and efficiently perform his or her function of determining whether the government has proven *each* element beyond a reasonable doubt.[4]

## XII.

## THE COURT SHOULD ORDER THE GOVERNMENT TO PRODUCE IN DISCOVERY REPORTS RELATED TO ALL TECS HITS RELATED BOTH TO MR. HAYNES AND THE VEHICLE MR. HAYNES WAS DRIVING WHEN HE WAS ARRESTED

**A.    Vehicle TECS Hits.**

The government has stated its belief that the Red Nissan Pathfinder's crossing earlier that morning is

---

[4] Mr. Haynes is willing to pay the costs for the additional copies of the jury instructions. Defense counsel is willing to make the copies, as well.

evidence of the "Brings-to" offense. As such, that TECS hit should be produced before trial, since it is evidence that the government intends to introduce in its case in chief. However, the government should also produce all TECS hits related to the Red Nissan Pathfinder. Given that Mr. Haynes may proceed on the theory that a third party was responsible for putting the material witness in the vehicle without Mr. Haynes' knowledge, information regarding third parties being apprehended or questioned when driving this car would constitute Brady evidence. Mr. Haynes thus requests that this Court order the government to produce reports or other paperwork related to other crossings by the Red Nissan Pathfinder.

**B.    TECS Hits Related to Mr. Haynes.**

In addition, the government should produce TECS related to Mr. Haynes, regardless of what vehicle he was in while crossing. The government should also produce TECS related to pedestrian crossings. Given that the government has noticed its intent to produce 404(b) involving crossings it claims resulted in apprehensions relating to alien smuggling, the 404(b) TECS hits must not be produced in a vacuum. The government should not withhold exculpatory TECS hits (i.e., crossing not in any way involving alien smuggling), only to make use of two instances that it claims were related to alien smuggling.

## XIV.

### THIS COURT SHOULD PRECLUDE THE ADMISSION OF 404(B) AND 609 EVIDENCE

**A.    404(b) Evidence.**

    **1.    The 404(b) Notice Was Not Timely, and Its Introduction Will Cause Prejudice and Inefficiency in the Trial.**

Federal Rule of Evidence 404(b) requires that the government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. Fed. R. Evid. 404(b). The notice requirement is triggered when timely requested by the defendant. United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999). Mr. Haynes first requested the precise 404(b) evidence the government now states it plans to introduce over two months ago, on March 14, 2008. The government provided no notice of 404(b) evidence until May 22, 2008. There it noticed only one alleged 404(b) "other act," an arrest that allegedly occurred on November 27, 2007. The delay of over two months was unreasonable, and prevented Mr. Haynes from properly investigating the arrest at issue. It will likely take additional time to investigate the prior arrest, particular since there was another person in the car who was  In addition, it will significantly affect the court's

ability to conduct the trial in a timely and efficient manner. Further, the evidence provided by the government has redacted information, including information about the individuals found in the trunk. This precludes investigation of the case, which is necessary to determine the circumstances of the stop, the search, the arrest, and the events following. It is improper for the government to provide late notice of 404(b) and then redact it in such a way that precludes investigation.

The government has further delayed in providing timely notice of a second alleged 404(b) "other act." On May 29, 2008, the government faxed a notice regarding an even older alleged arrest, on October 26, 2006. The government's notice is improper because it does not contain any information regarding the alleged arrest or what, precisely, it seeks to introduce.

**2.   The Notice is Insufficient Because It Articulates No Evidential Hypothesis, Much Less the Required "Precise Evidential Hypothesis."**

The government in both notices states that it will use the alleged 404(b) evidence to prove "knowledge, intent, plan, opportunity, and lack of mistake." This pro forma notice is insufficient. The government "must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from other acts evidence." United States v. Mermanesh, 689 F.2d 822, 820 (9th Cir. 1982). It has not done so, and in fact, it has obscured whatever it believes to be the evidential connection behind five possible reasons for admitting the evidence, without providing any evidential hypothesis as to any of the alleged grounds for admission. Because it has not identified a "precise evidential hypothesis," the evidence must be precluded.

**3.   The Government Has Not Satisfied the Four Requirements It Must Satisfy to Meet Its Burden In Showing Admissibility.**

In determining whether "other acts" evidence may be admitted, the government must prove that:

(1) It proves a material element of the offense for which the defendant is now charged;
(2) It is similar to the charged conduct;
(3) It is based upon sufficient evidence; and
(4) It is not too remote in time.

United States v. Houser, 929 F.2d 1369, 1373 (9th Cir. 1990). Because the government provided no evidence related to the alleged October, 2006 arrest, this portion of the motion deals solely with the alleged November, 2007 arrest. However, the defense anticipates further briefing once it receives actual evidence of the alleged October, 2006 arrest. The government has proven none of these things, and thus the evidence must be

precluded. Mermanesh, 689 F.2d at 830.

**4.    The Prejudice of the Evidence Outweighs Its Probative Value.**

In addition, the government must prove that the probative value of the conduct outweighs its prejudicial effect. Id.; United States v. Alfonso, 759 F.2d 728, 739 (9th Cir. 1985) (government bears burden of proving 404(b) admissibility. Here, the prejudicial effect substantially outweighs the probative value. The government seeks to introduce the proposed 404(b) evidence as pure propensity evidence, nothing more. As such it is inadmissible.

**5.    The Government Has Not Proved That the 404(b) Evidence Was Lawfully Obtained.**

The government must prove that the evidence of the alleged 404(b) act was taken in compliance with the Constitution. United States v. Hill, 898 F.2d 72, 74 (7th Cir. 1990) (constitutionality of a search from a prior arrest must be determined before admitting the fruits of that search against a defendant in a later trial under Rule 404(b)); United States v. Hill, 60 F.3d 672, 677 (10th Cir. 1995) (district court erred in holding that "exclusionary rule simply does not apply to evidence admitted under Rule 404(b)"); United States v. Ozuna, 129 F.Supp.2d 1245, 1351 (S.D.Fla. 2001) ("I conclude that the exclusionary rule applies to Rule 404(b) evidence.") cf. United States v. Renteria, 625 F.2d 1279, 1282 (5th Cir. 1980) ("Unless barred by the Fourth Amendment challenge, th[e] [Rule 404(b) evidence was properly admitted").

Mr. Haynes moves to suppress evidence of his November 28, 2007 apprehension, based upon an unlawful search and seizure of the car he was driving. He will provide an affidavit supporting this contention in short order. At this point, however, it is apparent that the search of the vehicle at the checkpoint occurred in violation of his Fourth Amendment rights, and the alleged statements obtained by him were in violation of his Fifth and Sixth Amendment Rights, as he was never advised of his right to counsel. In addition, Mr. Haynes moves to suppress any statements he may have made based upon involuntariness and unlawful arrest.

**B.    609 Evidence.**

Here, Mr. Haynes timely requested notice of proposed Rule 404(b) evidence in his discovery requests to the government. In the event that the government indicates an intention to introduce 609 evidence, it is Mr. Haynes' position that there is no 609 evidence. Mr. Haynes requests an opportunity to revisit this issue should the government indicate an intention to introduce 609 evidence.

**XV.**

## THIS COURT SHOULD EXCLUDE POVERTY EVIDENCE

It is impermissible for the prosecution to elicit testimony or to comment in any fashion upon the difficult financial circumstances of the defendant. Such comments regarding poverty are forbidden. <u>United States v. Romero-Avila</u>, 210 F.3d 1017, 1022 n.2 (9th Cir. 2000).

Even before the <u>Romero-Avila</u> case, the Ninth Circuit had concluded as much. In <u>United States v. Mitchell</u>, 172 F.3d 1104 (9th Cir.1999), the defendant was convicted of bank robbery and, at trial, the prosecution offered evidence that the defendant was poor to prove the defendant's motive to commit the bank robbery. In reversing the conviction, the court stated that:

> Poverty as proof of motive has in many cases little tendency to make theft more probable. Lack of money gives a person an interest in having more. But so does desire for money, without poverty. A rich man's greed is as much a motive to steal as a poor man's poverty. Proof of either, without more, is likely to amount to a great deal of unfair prejudice with little probative value.

<u>Id.</u> at 1108-09. To be admissible, the court stated that the poverty evidence must be accompanied by something more, such as an "unexplained, abrupt change in circumstances." <u>Id.</u> at 1108-09. Ninth Circuit precedent suggests that poverty evidence is only admissible if accompanied by evidence of a specific and immediate financial need. <u>See</u> <u>United States v. Jackson</u>, 882 F.2d 1444, 1453 (9th Cir.1989) (Reinhardt, J., dissenting); <u>see also id.</u> at 1450 (majority opinion) (noting that "poverty alone does not indicate a motive to commit, or the commission of, a crime"); <u>see also</u> <u>United States v. Bensimon</u>, 172 F.3d 1121, 1129 (9th Cir. 1999) (fact that defendant in bankruptcy at time crime committed does not demonstrate particular need for money); <u>Mitchell</u>, 172 F.3d 1104, 1108-09 (9th Cir.1999) (evidence of poverty, absent "an unexplained abrupt change of circumstances," is inadmissible to prove motive); <u>United States v. Grissom</u>, 645 F.2d 461, 469 n.11 (5th Cir. 1981) ("[I]t is almost always grossly improper for any lawyer representing the United States government to comment on the **indigency** of a defendant.").

"Poverty comments" may not be made even when the evidence commented upon is admitted by the defense. <u>Romero-Avila</u>, 210 F.3d 1017, 1022 and n.2 (9th Cir. 2000). <u>Romero-Avila</u> specifically rejected the very argument that the defendant is barred from challenging comments upon improper poverty testimony because he elicited it during cross-examination, and held that the government's comments were plain error. As such, regardless of any evidence proffered by the defendant as to his financial circumstances, any reference to the defendant's financial situation must be excluded.

## XVI.

## **THE COURT SHOULD EXCLUDE THE GOVERNMENT'S CASE AGENT**

The Court may not exclude "a person whose presence is shown by a party to be essential to the presentation of the party's case" during a trial. Fed. R. Evid. 615(3). The government has made no showing that its case agent is such a person.

## XVII.

## **THIS COURT SHOULD PRECLUDE THE GOVERNMENT FROM INTRODUCING TECS HISTORY**

In order to admit TECS evidence, the government must lay a proper foundation under Federal Rule of Criminal Procedure Rule 16, Rules 404(b) and 702, the hearsay rules and the Confrontation Clause of the Sixth Amendment. Mr. Haynes' position is that, in either the government's case-in-chief or in rebuttal, TECS evidence is inadmissible because: 1) it is undisclosed Rule 404(b) evidence; 2) it is undisclosed expert testimony; 3) there is no hearsay exception on which the government can rely; and 4) the government cannot demonstrate the reliability of the TECS system. See United States v. Orozco, 590 F.2d 789, 792-93 (9th Cir. 1979) (to admit TECS documents under Rule 803(8), the TECS system's reliability must be demonstrated).[5]

**A.   TECS Testimony Is Undisclosed Rule 404(b) Evidence.**

---

[5] The defense contends that Orozco is wrong, and this Court should not follow it. Even the panel decision recognizes that it conflicts with the plain language of Rule 803(6), see id. 590 F.2d at 792 ("noting that Rule 803(8) provides that its scope "exclud[es], however in criminal cases matters observed by police officers and other law enforcement personnel . . ." and noting that "the customs inspector is one of the 'law enforcement personnel' included in rule 803(8)"). Government reports, which these are, are inadmissible under the public records exception. Fed. R. Evid. 803(8)(c), Advisory Comm. Note ("they are admissible only in civil cases and against the government in criminal cases in view of the almost certain collision with confrontation rights which would result from their use against the accused in a criminal case"); see also United States v. Oates, 560 F.2d 45 (2d Cir. 1977) (cited in the Fed. R. Evid. commentary expressly discusses the Rules 803(6) and 803(8) interplay and finds government reports inadmissible under both).

In addition, the inadmissibility of these documents under Rule 803(8)(c) cannot be cured by offering them pursuant to Rule 803(6). Rule 803(6) does not, by its terms, "apply to [investigations made pursuant to authority granted by law and the] findings of agencies and offices of the executive branch," United States v. Jones, 29 F.3d 1549 (11th Cir. 1994); as does Rule 803(8)(c). It is "inappropriate" to rely upon the business records exception when the language of Rule 803(8)(c) is clearly applicable. United States v. Sims, 617 F.2d 1371, 1377 (9th Cir. 1980); Alexander, The Hearsay Exception for Public Records in Federal Criminal Trials, 47 Alb. L. Rev. 699, 716-17 (1983).

The Ninth Circuit recognizes that prior border crossings are considered prior act evidence and are, thus, subject to Rule 404(b) analysis. United States v. Vega, 188 F.3d 1150, 1153 (9th Cir. 1999) ("evidence of Vega's prior border crossings and bank deposits is "other acts" evidence subject to the provisions of Rule 404(b)"). In Vega, the Court noted that "[a]s an initial matter, we note that this rule applies to all 'other acts,' not just bad acts. Thus, despite the fact that there is nothing intrinsically improper about Vega's prior border crossings . . . they are nonetheless subject to 404(b)." Id.

Since the prosecutor here has not indicated that he intends to introduce any Rule 404(b) evidence, he should be bound by his lack of notice. If he now wishes to introduce this as some sort of Rule 404(b) evidence in his case, he must establish the link to Mr. Haynes and the relevance to his theory of prosecution, as well as satisfy the strictures of Rule 404(b).

**B.     TECS Testimony is Undisclosed Expert Testimony.**

In this case, any TECS evidence would also constitute undisclosed expert testimony. Even though the government witness through which the government would seek to admit TECS evidence would not be rendering an "opinion," this does not remove this testimony from the realm of "expert testimony." The law provides to the contrary. According to Rule 702, the assumption that "experts testify only in the form of opinions . . . is logically unfounded." See Fed. R. Crim. P. 702 advisory committee's note. Rule 702 similarly provides that expert testimony can be based on "specialized knowledge," and cases indicate that the amendments to Rules 701 and 702 were made so as to prevent litigants from avoiding the expert witness disclosure requirements by labeling individuals as fact or laywitnesses and not soliciting "opinion" testimony. See In re Matter of the Complaint Illusions Holdings, Inc., 189 F.R.D. 316 (S.D.N.Y. 1999). The Complaint Illusions case involved a negligence claim surrounding a scuba diving accident. Defendants listed two witnesses who knew nothing about the facts and circumstances of the case, but purported to know much about scuba diving. Plaintiff argued that their testimony was expert testimony and sought to exclude it. Even though the testimony was factually based and the witnesses would merely describe things related to scuba diving, the court held that it was expert testimony because it was based upon the specialized knowledge related to scuba diving, testified to by individuals who otherwise had no connection to the case. Id.

Similarly, any testimony by a Customs Officer that his or her training equipped him or her to render an opinion on what the TECS information signified would constitute undisclosed expert testimony, the reliability

of which has never been litigated, under Federal Rule of Criminal Procedure 16 and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999).

## XVIII.
## **CONCLUSION**

For the foregoing reasons, Mr. Haynes respectfully requests that the Court grant the above motions in limine.

Respectfully submitted,

DATED:   June 2, 2008

/s/ David M.C. Peterson
**DAVID PETERSON**
**MICHELLE BETANCOURT**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Haynes