**DAVID M.C. PETERSON**
California State Bar No. 254498
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
E-mail: david_peterson@fd.org

Attorneys for Mr. Haynes

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE DANA M. SABRAW)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES HAYNES, III,<br><br>Defendant. | Case No. 08cr0366-DMS<br><br>Date: July 11, 2008<br>Time: 1:30 p.m.<br><br>**STATEMENT OF FACTS AND POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS** |

**I.**

**STATEMENT OF FACTS**

On February 5, 2008, Mr. Haynes was arrested in a maroon Pathfinder by Border Patrol Agents on State Route 94, in Campo, California. Relevant facts have been laid out in previous motions and are hereby incorporated by reference; facts relevant to each motion are included within that motion.

//
//
//
//
//
//
//

## II.

## **THE PROPOSED 404(B) EVIDENCE MUST BE SUPPRESSED BECAUSE IT WAS UNCONSTITUTIONALLY ACQUIRED[1]**

**A.    Statement of Facts With Regard to the Motion to Suppress 404(b) Evidence.**

On November 28, 2007, Agent Ramiro Ramirez was conducting primary inspection duties at the S.R. 94 Checkpoint located in Jamul, California. A blue Toyota Corolla alleged to be driven by Mr. Haynes approached the checkpoint. Agent Ramirez motioned for the car to stop and identified himself as a Border Patrol agent. He asked the driver his citizenship, which was United States. Agent Ramirez believed that the driver and passenger were acting very nervous and overly cooperative. Agent Ramirez allegedly asked the driver, Mr. Haynes, if he could look inside the trunk, and Mr. Haynes allegedly said "yes." Inspection of the trunk revealed two individuals attempting to conceal themselves. The circumstances surrounding the search of the vehicle are strongly disputed.

Mr. Haynes was arrested and transported to the Brown Field Border Patrol Station for processing. There, he allegedly stated that he had no idea how anyone got in his trunk. He allegedly said that he had no idea how any of this could be happened. Finally, he allegedly said he just went to go pick up his friend.

**B.    The Search of the Car on November 28, 2007 Was Not Consensual; Because the Government Has Not Satisfied Its Heavy Burden Showing Consent, the Fruits of the Search Must Be Suppressed.**

---

[1]    To the extent that the government relies on <u>United States v. Lopez-Martinez</u>, 725 F.2d 471 (9th Cir. 1984), for the proposition that a defendant in a criminal proceeding cannot attack the constitutionality of a previous arrest resulting in 404(b) evidence, the government is wrong. In <u>Lopez-Martinez</u>, the court held that 404(b) evidence was admissible despite a claim of an unconstitutional arrest, because (1) the arrest had occurred eight years prior, (2) the arrest had been made by a different agency, and (3) the 404(b) was <u>highly</u> probative of a fact in issue. Thus, the court held that because exclusion would result in virtually no deterrent effect, the exclusionary rule was not applicable. Here, the exclusionary rule's salutary deterrent effect is self-evident. First, the evidence here was obtained far more recently than the eight-year-old evidence in <u>Lopez-Martinez</u>. <u>Id.</u> at 476. Second, the Fourth <u>and</u> Fifth Amendment violations here were made by the very same agency, conducting operations having the very same purpose as the operation resulting in the instant criminal proceeding. The limited holding of <u>Lopez-Martinez</u> simply does not preclude any defendant, anywhere, from challenging constitutional violations that occurred prior to the instant offense.

A Border Patrol checkpoint is not the functional equivalent of the border. United States v. Franzenburg, 739 F.Supp. 1414, 1422 (S.D. Cal. 1990) (citing United States v. Martinez-Fuerte, 428 U.S. 543, 550 (1976)). Thus, the government may not conduct suspicionless searches at checkpoints. Rather, while stops for brief questioning are permissible at fixed checkpoints, the scope of this inquiry is strictly limited. "Any further detention" at checkpoints, particularly searches, must be supported by either probable cause or consent.[2] Martinez-Fuerte, 428 U.S. at 567; see also United States v. Soyland, 3 F.3d 1312, 1314 (9th Cir. 1993) (suppressing evidence for lack of probable cause to support checkpoint search); United States v. Preciado-Robles, 964 F.2d 882, 885 (9th Cir. 1992) (holding that arrests or searches at immigration checkpoints must be justified by either probable cause or consent).

The government bears the burden to show that a warrantless seizure does not violate the Fourth Amendment. United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1295 (9th Cir. 1988); see also United States v. Hawkins, 249 F.3d 867, 872 (9th Cir. 2001) (government bears burden of establishing that warrantless vehicle stop comports with Fourth Amendment). Mr. Haynes has moved, and hereby renews his motion, to suppress the evidence obtained as a result of the November 27, 2007 checkpoint search alleged in this case. See Clerk's Record 38 (Motion to Preclude Evidence That Violates Rule 404(b)). Because he disputes the constitutionality of the search, arrest, and subsequent interrogation (and its fruits), it is the government's burden to establish constitutionality. This Court should therefore exclude the proposed 404(b) evidence or conduct an evidentiary hearing.

The only "evidence" on the issue of the lawfulness at this time is a report of investigation by Border Patrol Agent Ramiro Ramirez. The unsigned, unsworn statement by Agent Ramirez states that on November 28, 2007, Agent Ramirez conducted a consensual search of the trunk. The agent's bare assertion that the search was consensual not sufficient to show a consensual search.[3] See United States

---

[2] Mr. Haynes also contends that, after *City of Indianapolis v. Edmond,* 531 U.S. 32, 42 (2000), the checkpoint in question is illegal because it exists only to advance a "general interest in crime control." The Supreme Court made clear in *Edmond* that such checkpoints violate the Fourth Amendment. *See id.*

[3] Indeed, under United States v. Bautista, 362 F.3d 584, 589, 591-92 (9th Cir. 2004), the Ninth Circuit held that the "government's burden to show voluntariness cannot be discharged by showing no more than acquiescence to a claim of lawful authority."

1  v. Shaibu, 920 F.2d 1423, 1426 (9th Cir. 1990) (as amended) (consent is "not lightly to be inferred, and

2  the government always bears the burden of proof to establish the existence of effective consent")

3  (citations and internal quotation marks omitted); see also United States v. Ziegler, 497 F.3d 890, 899

4  (9th Cir. 2007) (citing Shaibu).

5       Finally, the government bears the burden not only of proving consent, but also of proving that

6  consent was "freely and voluntarily given." Florida v. Royer, 460 U.S. 491, 497 (1983) ("[W]here the

7  validity of a search rests on consent, the State has the burden of proving that the necessary consent was

8  obtained and that it was freely and voluntarily given. . . ."). Voluntariness of consent to search is "to be

9  determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 222

10  (1973). The government must demonstrate both consent and voluntariness of consent. It has done

11  neither. Therefore the evidence arising out of the search on November 28, 2007 must be suppressed. If

12  the court is inclined to deny this motion, Mr. Haynes respectfully requests an evidentiary hearing.

13  **C.   Any Statements Made By Mr. Haynes Were Involuntary and In Violation of Miranda; Therefore They Must Be Excluded.**

14

15       **1.   *Miranda* Warnings Must Precede Custodial Interrogation.**

16       The prosecution may not use statements, whether exculpatory or inculpatory, stemming from a

17  custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective

18  to secure the privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966).[4]

19  Custodial interrogation is questioning initiated by law enforcement officers after a person has been

20  taken into custody or otherwise deprived of his freedom of action in any significant way. Id. See

21  Orozco v. Texas, 394 U.S. 324, 327 (1969).

22       Once a person is in custody, Miranda warnings must be given prior to any interrogation. See

23  United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980). Those warnings must advise the

24  defendant of each of his or her "critical" rights. United States v. Bland, 908 F.2d 471, 474 (9th Cir.

25

26  ───────────────

27    [4] In Dickerson v. United States, 530 U.S. 428, 120 S. Ct. 2326 (2000), the Supreme Court held that Miranda rights are no longer merely prophylactic, but are of constitutional dimension. Id. at 2336 ("we

28  conclude that Miranda announced a constitutional rule").

1990). If a defendant indicates that he wishes to remain silent or requests counsel, the interrogation must cease. Miranda, 384 U.S. at 474. See also Edwards v. Arizona, 451 U.S. 484 (1981).

According to discovery provided by the government, Mr. Haynes was interrogated and made a statement subsequent to his alleged November 18, 2007 arrest at the Jamul Checkpoint. There is no indication that he was ever read his Miranda rights. This is because he was not. Exh. A.

**2. The Government Must Demonstrate That Any Alleged Waiver of Mr. Haynes' Rights Was Voluntary, Knowing, and Intelligent.**

Of course, a waiver cannot be valid if an individual is not read his rights. In addition, when interrogation occurs without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant intelligently and voluntarily waived his privilege against self-incrimination and his right to retained or appointed counsel. Miranda, 384 U.S. at 475. It is undisputed that, to be effective, a waiver of the right to remain silent and the right to counsel must be made knowingly, intelligently, and voluntarily. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). The standard of proof for a waiver of these constitutional rights is high. Miranda, 384 U.S. at 475. See United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984) (the burden on the government is great, the court must indulge every reasonable presumption against waiver of fundamental constitutional rights).

The validity of the waiver depends upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. Edwards v. Arizona, 451 U.S. 477, 472 (1981); Johnson v. Zerbst, 304 U.S. 458, 464 (1983). See also United States v. Heldt, 745 F.2d at 1277; United States v. McCrary, 643 F.2d 323, 328-29 (9th Cir. 1981).

In Derrick v. Peterson, 924 F.2d 813 (9th Cir. 1990), the Ninth Circuit confirmed that the issue of the validity of a Miranda waiver requires a two prong analysis: the waiver must be both (1) voluntary, and (2) knowing and intelligent. Id. at 820. The voluntariness prong of this analysis "is equivalent to the voluntariness inquiry under the [Fifth] Amendment . . . ." Id. See infra pages 10-11.

The second prong, however, requiring that the waiver be "knowing and intelligent," mandates an inquiry into whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Id. at 820-21 (quoting Colorado v. Spring, 479 U.S. 564, 573 (1987)). This inquiry requires that the court determine whether "the requisite

1  level of comprehension" existed before the purported waiver may be upheld. Id. Thus, "[o]nly if the
2  'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the
3  requisite level of comprehension may a court properly conclude that the Miranda rights have been
4  waived." Id. (quoting Colorado v. Spring, 479 U.S. at 573) (emphasis in original) (citations omitted)).

5      Under prevailing Ninth Circuit law, the Government bears the burden of demonstrating a
6  Miranda waiver by clear and convincing evidence. See Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000)
7  (en banc) (constitutional rights may ordinarily be waived only if it can be established by clear and
8  convincing evidence that the waiver is voluntary, knowing, and intelligent) (citations omitted).
9  Moreover, this Court must "indulge every reasonable presumption against waiver of fundamental
10 constitutional rights." Id. (citations omitted). Unless and until the prosecution meets its burden of
11 demonstrating through evidence that adequate Miranda warnings were given and that the defendant
12 knowingly and intelligently waived his rights, no evidence obtained as result of the interrogation can be
13 used against the defendant. Miranda, 384 U.S. at 479.

14     Until the government meets its evidentiary burden of showing that the Miranda warnings were
15 sufficient or that the Miranda rights were knowingly or intelligently waived, the statements obtained
16 from Mr. Haynes.

17     **3.     Any Statements by Mr. Haynes Were Involuntary.**

18     Even when the procedural safeguards of Miranda have been satisfied, which the government has
19 not proved here, a defendant in a criminal case is deprived of due process of law if the conviction is
20 based upon statements that were involuntarily made. Arizona v. Fulminante, 499 U.S. 279 (1991);
21 Jackson v. Denno, 378 U.S. 368, 387 (1964). The government bears the burden of proving by "at least"
22 preponderance of the evidence that a confession is voluntary. Seibert, 542 U.S. at 608, n.1, citing Lego
23 v. Twomey, 404 U.S. 477, 483 (1972).

24     In order to be voluntary, a statement must be the product of a rational intellect and free will.
25 Blackburn v. Alabama, 361 U.S. 199, 208 (1960). In determining whether a defendant's will was
26 overborne in a particular case, the totality of the circumstances must be considered. Schneckloth v.
27 Bustamonte, 412 U.S. 218, 226 (1973). Some factors taken into account have included the youth of the
28 accused, his lack of education, his low intelligence, the lack of any advice to the accused of his

1  constitutional rights, the length of the detention, the repeated and prolonged nature of the questioning,
2  and the use of physical punishment such as the deprivation of food or sleep. Id. The fact that the
3  statement occurred subsequent to the six-hour safe harbor period also is of consequence. See 18 U.S.C.
4  § 3501.

5  A confession is deemed involuntary whether coerced by physical intimidation or psychological
6  pressure. Townsend v. Sain, 372 U.S. 293, 307 (1962). "The test is whether the confession was
7  `extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however
8  slight, [or] by the exertion of any improper influence.'" Hutto v. Ross, 429 U.S. 28, 30 (1976) (quoting
9  Bram v. United States, 168 U.S. 532, 542-43 (1897)). Accord, United States v. Tingle, 658 F.2d 1332,
10 1335 (9th Cir. 1981).

11 A number of factors indicate that Mr. Haynes' statements were not voluntary. Most importantly,
12 he was never read his rights. See Exh. A. This is a crucial aspect of the voluntariness analysis. See 18
13 U.S.C. § 3501(b) (The trial judge in determining the issue of voluntariness shall take into consideration
14 all the circumstances surrounding the giving of the confession, including . . . whether or not such
15 defendant had been advised prior to questioning of his right to the assistance of counsel . . ."). Also
16 crucial is the fact that, aside from not being advised of his right to counsel, Mr. Haynes was, in fact,
17 without counsel when he was interrogated on November 28, 2007. See Exh. A.

**D.  Mr. Haynes Requests That This Court Conduct An Evidentiary Hearing.[5]**

19 This Court must make a factual determination as to whether consent existed, and whether such
20 consent was voluntarily given. Further, Court must make a factual determination as to whether a
21 confession or statements were voluntarily given prior to their admission into evidence. 18 U.S.C. §
22 3501(a). Where a factual determination is required, courts are obligated by Fed. R. Crim. P. 12 to make

---

[5] Mr. Haynes contends that because it is the government's burden to prove not only the fact of consent but also the fact that the consent was valid, there exists a factual issue for this court to resolve. See Bumper v. North Carolina, 391 U.S. 543 (1968) (government bears burden of proving valid consent before evidence garnered through a search is admitted). Equally, the government bears the burden of proving Miranda warnings and valid waiver, and it is they who seek to introduce the evidence; thus there is a factual issue pending before the evidence can be admitted. Should this court require a declaration in order to grant an evidentiary hearing, Mr. Haynes will comply and submit a declaration in support of this request for an evidentiary hearing.

1 factual findings. See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Because

2 "'suppression hearings are often as important as the trial itself,'" id. at 609-10 (quoting Waller v.

3 Georgia, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an

4 unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading.

5     Under section 3501(b), this Court must consider various enumerated factors in making the

6 voluntariness determination, including whether the defendant understood the nature of the charges

7 against her and whether she understood her rights. Without the presentation of evidence, this Court

8 cannot adequately consider these statutorily mandated factors. Mr. Haynes accordingly requests that this

9 Court conduct an evidentiary hearing pursuant to 18 U.S.C. § 3501(a), to determine, outside the

10 presence of the jury, whether any statements made by the defendant were voluntary.

11     The Ninth Circuit has recently reinforced the constitutional requirement that certain pre-trial

12 motions, particularly motions to suppress evidence ordinarily require an evidentiary hearing. United

13 States v. Medina, 524 F. 3d 974 (9th Cir. April 29, 2008) ("In this case, Contreras's motions to suppress

14 statements and evidence are of the type that would normally require an evidentiary hearing") (citing

15 United States v. Walczak, 783 F.2d 852, 857 (9th Cir.1986), for the proposition that "[a]n evidentiary

16 hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite,

17 specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going

18 to the validity of the search are in issue").

19 **III.**

20 **THIS COURT SHOULD RECONSIDER ITS DENIAL OF THE MOTION TO SUPPRESS**

21 **A.   Statement of Facts with Regard to The Motion To Reconsider.**[6]

22     **i.   The Stop and Events Prior**.

23 On February 5, 2008, Mr. Haynes was arrested in a maroon Pathfinder by Border Patrol Agents

24 on State Route 94, in Campo, California. The events leading to the arrest were as follows.

---

[6] The following statement of facts is based on the probable cause statement, limited discovery provided by the government, and the testimony of witnesses at the evidentiary hearing. Mr. Haynes in no way admits the truth of these facts nor their accuracy as cited in these motions. Further, he reserves the right to take a position contrary to the following statement of facts at the motions hearing and at trial.

At approximately 8:00 a.m., Border Patrol Agent Jose J. Vasquez, wearing plain clothes, observed a black male walk into a convenience story. He then observed that black male walk out of the convenience store. The man crossed the street and walked towards a Nissan Pathfinder. Agent Vasquez saw the black male, later identified by him as Mr. Haynes, "walk toward" two individuals near the Pathfinder and exchange a few brief words with them. Mr. Haynes got into the vehicle and left the parking lot. Mr. Haynes headed north on Highway 188 toward State Route 94. The individuals began walking south towards Mexico.

Agent Vasquez then approached the two individuals walking south towards Mexico. As he attempted to approach them, Agent Vasquez testified that both started to run towards Mexico. Agent Vasquez apprehended one of them; the other absconded into Mexico. After identifying himself as a Border Patrol agent, Agent Vasquez questioned the individual, who was later identified as Francisco Nava-Montenegro. Nava-Montenegro admitted that he was in the United States illegally.

Mr. Nava-Montenegro denied this version of events. He stated that he never ran toward Mexico. In fact, the other individual also stopped when approached by Agent Vasquez. Mr. Nava-Montenegro remembers that the individual asked Agent Vasquez if he could smoke a cigarette. Agent Vasquez said no. At that point, the individual fled to Mexico, and Agent Vasquez apprehended Mr. Nava-Montenegro.

Based upon what he had seen, Agent Vasquez radioed to Border Patrol Agent Diaz, who was also driving an unmarked car. According to Agent Diaz, Agent Vasquez told him to pull over a red Nissan Pathfinder being driven by an African-American male. Agent Vasquez further stated that he had observed two males talking to the African-American male. Agent Diaz began following Mr. Haynes, and participated in the stop of the Red Nissan Pathfinder some eight miles later. Agent Diaz did not write a report of his involvement in the arrest. However, at the evidentiary hearing on the motion to suppress, he stated that he noticed the vehicle appeared heavily laden. This information did not appear in any report, and it was the first time defense counsel heard anything about the vehicle appearing heavily laden.

*//*

*//*

**ii.    The Court's Findings Following the Evidentiary Hearing.**

Following an evidentiary hearing on May 30, 2008, this court found that under the totality of the circumstances, there was reasonable suspicion that criminal activity was afoot. The court found several reasons for this. First, the area was very near the border, in an area generally known for alien trafficking. Second, the parking lot was specifically known for alien smuggling. Third, the court stated that the fact that Mr. Haynes walked, detached from his vehicle, from one parking lot to another gave an objective basis to believe that he didn't drive the vehicle and park it. Fourth, Mr. Haynes had a conversation with the two individuals which, although brief, was not animated. Fourth, Mr. Haynes climbed in the driver side of the vehicle. Fifth, when the two individuals were approached by Agent Vasquez, either one or both fled. Sixth, the fact that Jesus Nava-Montenegro was illegally in the United States gave further suspicion. Lastly, the court noted that the fact that the vehicle appeared heavily-laden, based upon his observation, added both to reasonable suspicion and probable cause to stop the Pathfinder and search it.

**iii.    Defense Counsel's Experiment**

Following this court's denial of the motion to suppress, defense counsel obtained a Nissan Pathfinder from the same year and conducted an experiment to determine whether Agent Diaz' testimony that the vehicle appeared heavily laden was in conformity with the payload of a 2005 Nissan Pathfinder. It was not.

On June 5, 2008, defense investigator Jose Leano performed an experiment with a 2005 Nissan Pathfinder, to determine how much the same amount of weight in the Red Pathfinder that Agent Diaz observed to be "heavily laden" actually lowered a vehicle. An additional two-hundred pounds above

1  what was in the red Nissan Pathfinder lowered the test vehicle by only two-and-one-eighths inches.[7]

2  See Declaration of Jose Leano, attached hereto as Exhibit A.

The payload, i.e., carrying capacity of a 2005 Nissan Pathfinder SE Offroad 4-wheel-drive vehicle is 1,239 pounds.[8]  The vehicle driven by Mr. Haynes was a 2005 Nissan Pathfinder SE 4-wheel-drive, which has maximum payload 1,308 pounds even higher than that of the vehicle upon which the experiment was conducted.  This means the Red Nissan Pathfinder stopped on February 5, 2008 would be even less affected by the weight than the vehicle upon which the experiment was conducted.

### B. New Evidence Indicates That At Least One of the Factors Considered By the Court in Finding Reasonable Suspicion and Probable Cause Did Not Exist.

Mr. Haynes contends that the court's holding was incorrect as a matter of law, and he respectfully requests that the court reconsider its denial of his motion to suppress.[9]  However, and in addition to his contention of an error of law, Mr. Haynes brings before the court additional evidence that undermines Agent Diaz' claim on the stand that the vehicle appeared "heavily laden."

//

---

[7] The material witnesses' weights are listed on the form I-213s filled out by Agent Diaz himself.  Their combined weight, per government discovery was 670 pounds. See Exhibit B, Report of Investigation ("ROI") and I-213s of Material Witnesses in Nissan Pathfinder.  Specifically, the ROI and I-213s list the individuals weights as follows:

| | |
|---|---|
| Salvador Garrido-Paz: | 180 pounds |
| Jorge Carino: | 150 pounds |
| Laura Lopez-Alfaro: | 150 pounds |
| Camilo Vermudez-Lopez: | 90 pounds |
| Jose Vermudez-Lopez: | 100 pounds |

[8] See Exhibit C, Vehicle Specs and Payload from Autos.MSN.com.  The website accessed to obtain this information was:
http://autos.msn.com/research/vip/spec_engines.aspx?year=2005&make=Nissan&model=Pathfinder&trimid=-1.

[9] Specifically, Mr. Haynes continues to argue that the reasonable suspicion was properly and should have remained limited to suspicion meriting investigation of the two individuals who were near the car.  Beyond the fact that he briefly interacted with them in a public place, there was nothing suspicious with regard to Mr. Haynes or the vehicle he was driving.  Reasonable suspicion must be particularized to the individual who is subjected to the stop.  Cortez, 449 U.S. 411, 417-18.  Here, the suspicious behavior of the two individuals simply could not transfer to Mr. Haynes based upon his mere propinquity to their suspicious behavior.  Ybarra v. Illinois, 444 U.S. 85, 91 (1979).

### 1.     The Vehicle Was Not Heavily Laden.

Agent Diaz' description of a "heavily-laden" vehicle belies the fact that the vehicle did not appear noticeably weighed down by a payload less than half of the maximum payload of the vehicle specified by the manufacturer. Not only does it <u>sound</u> illogical that the vehicle would be riding low due to five individuals in the rear cargo area, objective experimentation bears out the proposition that Agent Diaz simply did not see a heavily laden vehicle. While two inches is a measurable amount, it is not something that is <u>objectively apparent</u> to an individual in another car, particularly when they are watching the vehicle while in movement. In short, the vehicle was not heavily laden, and it did not <u>objectively</u> appear so to Agent Diaz.

The claim by Agent Diaz may not count in the calculus of either reasonable suspicion or probable cause, because it is not true. The Fourth Amendment requires a "particularized and <u>objective</u> basis for suspecting the particular person stopped of criminal activity" before the stop of a vehicle. <u>United States v. Cortez</u>, 449 U.S. 411, 417-18 (1981) (emphasis added). An objective basis, aside from being something more than just a "hunch," must also have a basis in actual, observable phenomenon. <u>Hernandez-Alvarado</u>, 891 F.2d 1414, 1416 (9th Cir. 1989) (mere subjective impressions of officer may not be accorded weight in a reasonable suspicion analysis). When a claimed objective fact is contradicted by an experiment recreating the objective circumstances supposedly witnessed by the officer, it should not be accorded any weight.

**C.     Because the Subjective Impression of the Officer Is Contrary To Empirical, i.e., Objective, Fact, It May Not Be Given Any Weight.**

Although the facts "are to be interpreted in the light of a trained officer's experience," they must be "more than the mere subjective impressions of a particular officer." <u>Hernandez-Alvarado</u>, 891 F.2d at 1416. Here, to the extent that Agent Diaz had any impression of the Pathfinder being heavily loaded, it was not an "objective" impression, because it was not objectively true. Agent Diaz' "mere subjective impression" may not be given any weight under a reasonable suspicion or probable cause analysis. <u>Id.</u>

If Agent Diaz' inference that the vehicle was heavily laden had an objective basis, then it could be accorded weight. However, where the objective facts demonstrate only a minor difference in the height of the vehicle, an officer's claim that he was able to view such a minor difference—and determine that it meant

1 the vehicle was heavily laden—is simply an assertion of his subjective impression, not backed up by

2 objective reality. The vehicle was not heavily laden, and Agent Diaz' unreasonable subjective impression

3 to the contrary may not be accorded any weight.

**D. The Court Should Not Give Any Weight To A Post-Hoc Incantation of a Grounds for Reasonable Suspicion; Instead, It Opens the Officers Credibility to Challenge.**

In <u>United States v. Rodriguez</u>, 976 F.2d 592, 595 (1992), the Ninth Circuit warned that the use of an "incantation" in the "agent's 'reasonable suspicion' phrase book," when not in conformity with the circumstances actually shown, mean that "its credibility is open to challenge." <u>Id.</u> Here, Agent Diaz testified to a standard and oft-recited ground for reasonable suspicion—a heavily laden vehicle. This was in spite of the fact that he had never written a report stating this, in spite of the fact that Agent Vasquez noticed no such thing, and even though the objective fact is that a 2005 Nissan Pathfinder with even 876 pounds in it does not appear heavily laden. <u>See</u> Exh. A.

Agent Diaz simply recited a factor known to add significantly in favor of reasonable suspicion. The fact that Agent Diaz testified to this on the stand for the first time, and in contradiction of the physics of a 2005 Nissan Pathfinder, indicates that his credibility must bow to the objective facts required by the Fourth Amendment. <u>Rodriguez</u>, 976 F.2d at 595. <u>See</u> Exh. A. Here, the objective facts demonstrate that Agent Diaz' impression either did not occur, or was not a reasonable impression or inference based upon objective facts. As such, it must be accorded no weight. Absent his incantation, there is no reasonable suspicion to pull over Mr. Haynes.[10] In addition, this factor was not properly accorded weight in the court's probable cause analysis, and there was no probable cause to search Mr. Haynes. Mr. Haynes was unconstitutionally stopped and searched. He respectfully respects that the court reconsider its decision otherwise, in light of the new evidence presented to the court. At stake in here is the "right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." <u>Rodriguez</u>, 976 F.2d at 596 (quoting <u>Union Pac. R. Co. v. Botsford</u>, 141 U.S. 250, 251 (1891)).

//

---

[10] Even with his incantation of a "heavily-laden vehicle," Mr. Haynes strongly contends that there was no reasonable suspicion to stop him.

## IV.

## **THIS COURT SHOULD DIRECT THE GOVERNMENT TO FILE A BILL OF PARTICULARS**

**A.  Mr. Haynes Has Not Been Adequately Advised of the Charges Against Him.**

Mr. Haynes has not been adequately advised of the charges against him through the indictment and the other disclosures made by the government.  The government has not made any effort nor taken any step to advise Mr. Haynes on what theory it is proceeding on the "brings-to" counts against him in the indictment.  It is presumed that the government will be proceeding on an "aiding and abetting" rather than a "principal" theory of liability.  Because Mr. Haynes has no idea what the government is alleging he did to "aid and abet," nor who he is alleged to have aided and abetted, nor on what theory of aiding and abetting the government will proceed at trial, he respectfully requests that this court enter an order directing the government to file a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f).[11]  United States v. Long, 706 F.2d 1044, 1054 (9th Cir. 1983) ("[i]n determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government.")  This court should order the government to produce a bill of particulars against Mr. Haynes.  As to each count in the indictment alleging a "brings-to" offense, the indictment simply states the elements of the underlying offense, and does not thereby advise Mr. Haynes of any details regarding the aiding and abetting charge, aside from putting him on notice that the government may proceed on that theory.  Aiding and abetting, is, of course, far broader as a charge, and thus Mr. Haynes requires some notice as to how the government will proceed on that charge.  For that reason, this court should order the government to file a bill of particulars.

**B.  A Bill of Particulars Is the Appropriate Way to Address the Inadequate Notice.**

The purpose of the bill of particulars is threefold: (1) to provide a defendant with information about the details of the charges necessary to the preparation of a defense; (2) to avoid prejudicial surprise at trial;

---

[11] Although he believes he has shown "good cause," the 1966 amendment to Rule 7(f) of the Federal Rules of Criminal Procedure was intended to liberalize discovery by eliminating the requirement that cause be shown before a court may grant a bill of particulars.  See United States v. Leach, 427 F.2d 1107, 1110 (1st Cir. 1970);  United States v. Addonizio, 451 F.2d 49 (3rd Cir. 1971); Fed.R.Crim.P. 7(f) advisory committee's note.

1  and, (3) to protect against a second prosecution based upon the same set of facts. United States v. Skalski,
2  1995 WL 7870, *2 (N.D.Cal. 1995)(citing Yeargain v. United States, 314 F.2d 881 (9th Cir. 1963)).  The
3  bill requires the government to particularize the matters charged in the indictment, thus elucidating the
4  theory of its prosecution.  Yeargain v. United States, 314 F.2d 881, 882 (9th Cir. 1963). See also United
5  States v. Rodrigues, 237 Fed.Appx. 178 (9th Cir. 2007) (quoting United States v. Long, 706 F.2d 1044,
6  1054 (9th Cir.1983) ("A motion for a bill of particulars is appropriate where a defendant requires
7  clarification in order to prepare a defense.... It is designed to apprise the defendant of the specific charges
8  being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double
9  jeopardy ....")).

10  Indeed, a bill of particulars should be ordered whenever it appears necessary to enable the defendant
11  to meet the charge against him or to avoid danger of injustice.  United States v. Allied Chemical & Dye
12  Corp., 42 F. Supp. 425, 428 (S.D.N.Y. 1941)(citing Coffin v. United States, 156 U.S. 432, 452 (1895). This
13  is true even where the indictment states all the "ingredients" (or elements) of the offense. Myers v. United
14  States, 15 F.2d 977, 983 (8th Cir. 1926)("The office of a bill of particulars attaches without distinction,
15  where the indictment states all the ingredients of the offense and further detail may be required or demanded
16  for the protection of the defendant"). See also United States v. Thompson, 189 F. 838, 839 (W.D.Va. 1911)
17  ("An indictment may be so expressed as to be good on demurrer and which still does not give the defendant
18  all the information which he should in fairness have in order to properly prepare for trial, and in such case
19  the defects in the indictment, in Federal practice, may be overcome by a bill of particulars").

20  **C.     The Information Mr. Haynes Requests In a Bill of Particulars.**

21  The government has four pieces of information that are relevant to Mr. Haynes' request for a bill of
22  particulars; each one is addressed in turn.

23  First, he requests that the government disclose who it will be alleging committed the underlying
24  offense. This is to allow him to prepare for trial, and to prevent the surprise attendant upon hearing for the
25  first time at trial who the government believes committed the underlying offense.  See Gaskins, citing
26  United States v. McDaniel, 545 F.2d 642, 644 (9th Cir. 1976) (aiding and abetting requires, as an element
27  "that someone committed the underlying substantive offense").

28

1    Second, he requests that the government disclose what it is exactly that Mr. Haynes did to aid and
2    abet the three alleged "brings-to" offenses?  That is, what actions allegedly taken by him constitute the
3    elements of aiding and abetting?

4    Third, what among the many possible ways to aid and abet is the government alleging against Mr.
5    Haynes—did he aid? Or abet? Or counsel? Or command? Or induce? Or procure the commission of the
6    charged offense? See 18 U.S.C. s 2. Not knowing before trial which among many possible ways of proving
7    an element of the offense will prevent Mr. Haynes from preparing a defense; a bill of particulars will
8    minimize surprise.

9    Fourth, one of the elements against which Mr. Haynes must defend himself is the element "that [he]
10   assisted or participated in the commission of the underlying substantive offense." See United States v.
11   Lopez, 484 F.3d 1186 (9th Cir. 2007) (en banc) (quoting United States v. Gaskins, 849 F.2d 454, 459 (9th
12   Cir. 1988)).  He requests that the government include in its bill of particulars what he did that to "assist[]
13   or participate[]" in the commission of the brings-to offenses.  Lopez, 484 F.3d 1186.

14   In order to prepare his defense and meaningfully defend himself against the above four elements,
15   Mr. Haynes requests a bill of particulars that includes:

16   1. Who the government will be alleging committed the underlying offense;
17   2. How Mr. Haynes is accused to have assisted or participated in the commission of the underlying substantive offense;
18   1. specifically, whether Mr. Haynes is accused of aid[ing], abet[ting], counsel[ing], command[ing],
19   induc[ing] or procur[ing] the commission of the offense.
20   3. How, where and under what circumstances the underlying offense occurred.
21   4. The acts of Mr. Haynes that are alleged to have constituted the required "assisting" or
22   "participation" in the underlying offense.
23   //
24   //
25   //
26   //
27   //
28   //

## V.

## **CONCLUSION**

For these and all the foregoing reasons, the defendant, Mr. Haynes, respectfully requests that this Court grant his motion and grant any and all other relief deemed proper and fair.

Respectfully submitted,

Dated: June 20, 2008
          */s/ David M.C. Peterson*
**DAVID M.C. PETERSON**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Haynes

N:\Cases\1324\Haynes\404(b) exclude mtn.wpd

INDEX OF EXHIBITS

Exhibit A   -   Form I-831 from Alleged 11/28/2007 Arrest
Exhibit B   -   Declaration of Jose Leano
Exhibit C   -   ROI and I-826s Indicating Weight of Material Witnesses
Exhibit D   -   Nissan Pathfinder Payload Chart

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy to Chambers

Copy to Assistant U.S. Attorney via ECF NEF

Copy to Defendant

Dated:  June 20, 2008                             /s/ DAVID M. PETERSON
                                                  Federal Defenders of San Diego, Inc.
                                                  225 Broadway, Suite 900
                                                  San Diego, CA  92101-5030
                                                  (619) 234-8467  (tel)
                                                  (619) 687-2666  (fax)
                                                  david_peterson@fd.org (email)

N:\Cases\1324\Haynes\404(b) exclude mtn.wpd