1  KAREN P. HEWITT
   United States Attorney
2  AARON B. CLARK
   CA State Bar Number 239764
3  DAVID D. LESHNER
   CA State Bar Number 207815
4  Assistant United States Attorneys
   Federal Office Building
5  880 Front Street, Room 6293
   San Diego, California 92101-8893
6  Telephone: (619) 557-6787

7  Attorneys for Plaintiff
   United States of America

8

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11  UNITED STATES OF AMERICA,        )    Criminal Case No. 08-CR-0366-DMS
                                     )
12                    Plaintiff,     )    DATE:        July 11, 2008
                                     )    TIME:        1:30 p.m.
13           v.                      )    COURT:       10
                                     )    Honorable Dana M. Sabraw
14  JAMES HAYNES, III,               )
                                     )    **UNITED STATES' RESPONSE IN**
15                    Defendant.     )    **OPPOSITION TO DEFENDANTS'**
                                     )    **MOTIONS TO:**
16                                   )
                                     )    **(1)   SUPPRESS 404(B) EVIDENCE**
17                                   )    **        BECAUSE IT WAS**
                                     )    **        UNCONSTITUTIONALLY**
18                                   )    **        OBTAINED**
                                     )    **(2)   RECONSIDER ITS DENIAL OF**
19                                   )    **        THE MOTION TO SUPPRESS**
                                     )    **        ALL EVIDENCE BASED UPON**
20                                   )    **        NEW EVIDENCE**
                                     )    **(3)   DIRECT THE GOVERNMENT**
21  _____ )    **        TO FILE A BILL OF**
                                     )    **        PARTICULARS**
22

23        COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

24  Karen P. Hewitt, United States Attorney, and Aaron B. Clark and David D. Leshner, Assistant

25  United States Attorneys, and hereby files its Response in Opposition to defendant James Haynes,

26  III's motions.  Said Response is based upon the files and records of this case together with the

27  following memorandum of points and authorities.

28  / / /

**I**

**STATEMENT OF FACTS**

The facts germane to the specific motions before this Court are provided in detail below.

**II**

**POINTS AND AUTHORITIES**

**1.    THE 404(B) EVIDENCE SHOULD BE ADMITTED**

Defendant first contends that evidence of Defendant's November 28, 2007 apprehension, which the Government has moved to admit under Federal Rule of Evidence 404(b), must be suppressed because it was unconstitutionally acquired. [Deft's Mtn 2-8.]  Defendant here errs on several levels.

**A.    The November 28, 2007 Incident**

At approximately 9 p.m. on August 28, 2007, Defendant approached the S.R. 94 Checkpoint as the driver of a blue Toyota Corolla.  There was one visible passenger in the vehicle, Michael Felix Mayfield.  Defendant and Mayfield presented themselves for inspection at the checkpoint to Border Patrol Agent Ramiro Ramirez.  Agent Ramirez noticed that both Defendant and Mayfield were "acting very nervous and overly cooperative."  Agent Ramirez asked for permission to look inside the trunk, which Defendant granted.  During his inspection of the trunk, Agent Ramirez found two individuals attempting to conceal themselves therein.  Both individuals found in the trunk admitted to being citizens and nationals of Mexico.  Neither had documents allowing them to be in the United States legally.

**B.    The Court is Not Required to Examine the Constitutionality of the Underlying Search**

First, Defendant's argument all but ignores controlling Ninth Circuit precedent.  The Court simply is not obligated to determine whether 404(b) evidence has been lawfully obtained.  See, United States v. Lopez-Martinez, 725 F.2d 471 (9th Cir. 1984).

2

1        In <u>Lopez-Martinez</u>, the defendant was charged with importation of heroin.  The district

2    court admitted evidence under Rule 404(b) of the defendant's prior arrest for possession of

3    marijuana eight years earlier in 1974, as well as evidence of statements he made following that

4    arrest.  On appeal, the Ninth Circuit held the district court properly declined to conduct a hearing

5    on the legality of the prior arrest because "even if the 1974 arrest were illegal, the Fourth

6    Amendment exclusionary rule would not bar use of Lopez's 1974 post-arrest statement in his 1982

7    trial." <u>Id</u>. at 476.  Furthermore, recognizing that the exclusionary rule "has never been interpreted

8    to proscribe the use of illegally seized evidence in all proceedings or against all persons," the Ninth

9    Circuit found no evidence "that the first investigation and prosecution might be planned to ensure

10   the success of the second." <u>Id</u>. (citation omitted).  Thus, the arresting agents in 1974 did not have

11   the subsequent 1982 prosecution in their "zone of primary interest" when they made the allegedly

12   illegal arrest, and the exclusionary rule would not bar use of evidence from the prior arrest

13   regardless of any Fourth Amendment violation. <u>Id</u>.

14       The Ninth Circuit has since repeatedly applied the rule of <u>Lopez-Martinez</u> to reject the very

15   argument Defendant raises here. <u>See</u>, <u>e.g.</u>, <u>United States v. Medina</u>, 181 F.3d 1078, 1082 (9th Cir.

16   1999) (district court properly declined to hold evidentiary hearing on lawfulness of prior arrests

17   leading to seizures of evidence used at trial – "Absent any threshold showing of a connection or

18   'nexus' in time, place, or purpose between the searches and the subsequent prosecution, there is no

19   appreciable deterrent purpose in suppressing the evidence."); <u>United States v. Basinger</u>, 60 F.3d

20   1400, 1407 (9th Cir. 1995) (trial court properly admitted evidence of prior apprehension under Rule

21   404(b) irrespective of claimed Fourth Amendment violation because evidence did not demonstrate

22   "bad faith or collusion" between officers involved in prior apprehension and the case at issue).

23       Indeed, Defendant inexplicably relegates to a single footnote his discussion of <u>Lopez-</u>

24   <u>Martinez</u> and its implications. [Deft's Motion at 2, fn. 1.] Describing the need for the exclusionary

25   rule here as "self-evident," he makes only passing reference to a threshold showing by pointing to

26

27

28                                                     3

the months between Defendant's arrests and the fact that both incidents involved "the very same agency, conducting operations having the very same purpose." [Id.]

This meager showing falls far short of suggesting, much less establishing, that Defendant's November 28, 2007 arrest "might [have been] planned to ensure the success of the [February 5, 2008 arrest.]"  Lopez-Martinez, 725 F.2d at 476.  Accordingly, absent such collusion, the exclusionary rule does not bar evidence of Defendant's prior arrest, irrespective of whether it was lawfully obtained, since "the additional measure of deterrence [in excluding evidence of the November 2007 arrest] is too small to outweigh the cost to society of the loss of relevant and probative evidence in the [current] proceeding." Id.  Defendant's motion should therefore be denied.

**C.     The 404(b) Evidence Was Lawfully Obtained**

Even if Defendant had demonstrated a threshold nexus between Defendant's November 2007 and February 2008 arrests, the evidence arising out of the November 2007 arrest was lawfully obtained.

The law is well settled that Border Patrol agents may stop every vehicle passing an operational internal checkpoint, even in the absence of individualized suspicion.  United States v. Martinez-Fuerte, 428 U.S. 543, 562 (1976); See also United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985) ("Automobile travelers may be stopped at fixed checkpoints near the border without individualized suspicion . . ."). Nor do agents need any individualized reasonable suspicion in order to refer a vehicle from primary to secondary for further immigration inspection. Id.; United States v. Soto-Camacho, 58 F.3d 408, 412-413 (9th Cir. 1995). In fact, any *potential* immigration violation supports a referral to secondary. United States v. Preciado-Robles, 964 F.2d 882, 884 (9th Cir. 1992) ("Potential immigration violations support a secondary referral....even in the absence of 'articulable suspicion.')" [internal citations omitted].

Of course, an arrest or search at an immigration checkpoint must be justified by either probable cause or consent. Preciado-Robles, 964 F.2d at 885 (citing Martinez-Fuerte, 428 U.S. at

567).  Consent need not be knowing or intelligent, but must be voluntary, that is, it must not be the product of coercive police behavior that overbears the will of the individual.  See United States v. Watson, 423 U.S. 411, 424 (1976); See also Preciado Robles, 964 F.2d at 885 (noting that consent must be freely given or voluntary) (citing Schneckloth v. Bustamante, 412 U.S. 218, 248-249 (1973).

The Ninth Circuit has developed a "totality of circumstances" standard to determine whether consent is valid.  In United States v. Cormier, 220 F.3d 1103 (9th Cir. 2000), the Ninth Circuit enumerated five *non-exclusive* factors relevant to this inquiry: (1) whether the defendant is in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given;[1] (4) whether the defendant was told she had the right not to consent; and (5) whether the defendant was told that a search warrant could be obtained.  Id. at 1112.

Here, on November 28, 2007 Defendant was stopped a valid, operational checkpoint.  The stop was therefore entirely proper.  See Martinez-Fuerte, 428 U.S. at 562; Montoya de Hernandez, 473 U.S. at 538.

During the brief stop, Defendant gave valid consent to search his vehicle.  Several factors support the fact that Defendant's consent was freely given.  First, Defendant was not in custody at the time he gave consent.  United States v. Leasure, 122 F.3d 837, 840 (9th Cir. 1997) ("In most cases, the earliest a person could be in custody is at the point when she is moved into a secondary inspection area and asked to exit her vehicle while it is searched.") Second, Border Patrol Agent Ramirez, the agent conducting the search, did not have his gun drawn, nor did the agent threaten Defendant in any way.  Third, the agents did not Mirandize Defendant before he gave consent because he was not under arrest.  Fourth, the brevity of the encounter further supports the conclusion that Defendant's consent was voluntary.  Defendant simply approached the checkpoint,

---

[1]    After the Cormier decision, the Ninth Circuit cast doubt on the relevance of Miranda warnings, concluding that it is at best an "open to question . . . whether the inclusion or exclusion of Miranda warnings in a givens set of circumstances should weigh much in either direction in considering voluntariness."  United States v. Perez-Lopez, 348 F.3d 839, 847 (9th Cir. 2003).

1  stated his citizenship, and unwittingly presented himself as "very nervous and overly cooperative"

2  to Agent Ramirez.  Agent Ramirez thereafter asked for consent to look inside the trunk of the

3  vehicle.  Defendant said "Yes."  Accordingly, the Defendant's consent was voluntary, and the

4  search made no intrusion on Defendant's Fourth Amendment rights.[2/]  Defendant's Motion should

5  therefore be denied.

6  **2.    THE MOTION TO RECONSIDER SHOULD BE DENIED**

7      Defendant contends that an experiment he conducted demonstrates that on February 5,

8  2008, the load vehicle did not appear heavily laden.  He therefore argues the Court erred in finding

9  reasonable suspicion and probable cause.  Defendant is in error since: (1) Agent Diaz' observations

10  of the load vehicle, while helpful, are not material to the Court's findings of reasonable suspicion

11  and probable cause; and (2) Defendant's experiment is inherently unreliable.

12      **A.    The February 5, 2008 Incident**

13      On the morning of February 5, 2008, Border Patrol Agent Jose Vasquez was operating in

14  a plainclothes capacity in Tecate, CA.  Agent Vasquez was stationed in his unmarked vehicle in

15  the parking lot of a small strip mall on the east side of Tecate Road approximately 300 yards north

16  of the international border.  Given its proximity to the international border, the area has proven

17  particularly susceptible to alien smuggling activity.  In fact, Agent Vasquez has personally made

18  approximately 25 alien smuggling apprehensions in this particular area, and approximately 50

19  overall in the Tecate area.

20      On this morning, at approximately 8:00 a.m., Agent Vasquez observed an individual, later

21  identified as Defendant, walking through the parking lot to a convenience store.  Defendant exited

22  the store shortly thereafter and walked through the parking lot.  He then walked across Tecate Road

23  toward a parking lot on the west side of the road.  This parking lot is commonly known as the

24  "Three Dollar Parking Lot."

25

26      [2/] The Government will not seek to introduce evidence of Defendant's post-arrest statements

27  or the smuggled aliens' statements from the November 28, 2007 apprehension.

28                                    6

1    The Three Dollar Parking Lot has several features that make it advantageous for alien

2    smuggling: (1) its proximity to the international border; (2) the lack of fencing around the parking

3    lot; (3) the lack of security guarding the parking lot; and (4) the number and variety of vehicles and

4    trailers in the lot, as well as bushes surrounding the lot, which make for easy hiding places.

5    Agent Vasquez did not recognize Defendant as one of the local residents he encounters in

6    that area on a regular basis, so he exited his vehicle to maintain observation. He then watched

7    Defendant as he entered the Three Dollar Parking Lot. As Defendant entered the lot, he approached

8    a maroon Nissan Pathfinder parked there. Two men were standing on the passenger side of the

9    vehicle, and the vehicle's rear passenger-side door was open. Agent Vasquez observed Defendant

10   converse briefly with one of the men before they shut the passenger side door. Defendant then

11   entered the vehicle's driver seat, quickly exited the parking lot, and drove the vehicle north on

12   Tecate Road. At the same time, the two individuals who had been standing on the passenger side

13   of the vehicle began walking south on the west side of Tecate Road.

14   Agent Vasquez walked across Tecate Road and began following the two individuals. When

15   the individuals observed him, Agent Vasquez identified himself as a Border Patrol agent and

16   ordered them to stop. Both individuals ignored Agent Vasquez' commands and fled south toward

17   the port of entry. Agent Vasquez apprehended one of them, but the other escaped into Mexico.

18   The individual apprehended by Agent Vasquez identified himself as Francisco Nava-

19   Montenegro and admitted to being a citizen of Mexico without documents allowing him to enter

20   the United States. Nava-Montenegro informed Agent Vasquez that he had crossed into the United

21   States on foot with a group led by a guide.

22   Based on his observations and the information obtained from Nava-Montenegro, Agent

23   Vasquez requested that other Border Patrol agents perform an investigatory stop of Defendant's

24   vehicle. Agents Jorge Diaz and Robert Godreau responded in unmarked vehicles and encountered

25   Defendant's vehicle as it proceeded eastbound on SR-94. As Agent Diaz observed and followed

26

27

28                                                    7

1   the vehicle, he noted that the vehicle rode heavy and seemed to bounce. Both he and Agent

2   Godreau requested that a marked Border Patrol perform an investigatory stop.

3         Defendant shortly thereafter yielded to a marked Border Patrol vehicle being driven by

4   Agent James Napoli. Agents Napoli, Diaz and Godreau approached Defendant's vehicle. A strong

5   odor of glue emanated from the vehicle. The agents also heard movement inside the speaker box

6   behind the vehicle's rear seat. Defendant was then removed from the vehicle, and Agent Godreau

7   entered the vehicle through a rear door. As he entered, Agent Godreau could hear voices inside the

8   speaker box, and he observed movement through a small opening in the box. Agents folded down

9   the rear seats and opened the speaker box. Five people were concealed inside. All five individuals

10  admitted to being citizens of Mexico without documents allowing them to enter the United States.

11        **B.    The May 30, 2008 Evidentiary Hearing**

12        At the May 30, 2008 evidentiary hearing on Defendant's Motion to Suppress Evidence the

13  Government called Agents Vasquez and Diaz, who testified consistent with the facts as stated

14  above. Defendant called the three material witnesses.

15        Following the testimony and argument, the Court denied Defendant's Motion to Suppress.

16  Specifically, the Court first found that the totality of the circumstances clearly established

17  reasonable suspicion that criminal activity may be afoot. In finding reasonable suspicion, the Court

18  cited: (1) the proximity of the Three Dollar Parking Lot from the international border; (2) the

19  history of alien smuggling activity in that parking lot; (3) the lack of fencing around the parking

20  lot, and the many bushes and vehicles there that allow for hiding places; (4) Agent Vasquez'

21  observations of Defendant walking through the shopping center parking lot to cross the street; (5)

22  Agent Vasquez' testimony that he observed Defendant speaking with two individuals within 1 to

23  2 meters of the load vehicle for brief, unanimated conversation; (6) Agent Vasquez' observation

24  that Defendant then climbed into the driver's seat of the load vehicle and drove away; (7) Agent

25  Vasquez' testimony that, in attempting to contact the individuals near the load vehicle, one or both

26

27

28                                              8

of them fled; and (8) Nava's admission to Agent Vasquez that he is in the United States illegally. [See Exhibit A, 101-103.]

The Court then further found probable cause to search the vehicle and subsequently arrest Defendant based on the above facts, as well as Agent Diaz' observations of the load vehicle and, after the load vehicle had stopped, his hearing the rustling in the back of the vehicle.

**C.    Defendant's June 5, 2008 Experiment**

As reported in Defendant's Motion, following the evidentiary hearing, Defendant set out to test Agent Diaz' claim that he had observed the load vehicle ride heavily and bounce unusually. [Deft's Motion at 10-13.]  To this end, Defendant enlisted an investigator familiar with viewing, inspecting, and experimenting on vehicles.

For this experiment, Defendant's investigator apparently decided against using the actual load vehicle.  Instead, understanding that the load vehicle was a 2005 Nissan Pathfinder SE Four Wheel Drive, the investigator performed his test on a 2005 Nissan Pathfinder SE Offroad Four Wheel Drive. [Deft's Motion at Ex. B.] While Defendant cites a chart listing the maximum payload for the standard models of these two vehicles, Defendant makes no documented effort to control for, or even determine, the condition of the load vehicle, including wear on the shocks, as compared to the test vehicle.

On June 5, 2008, the investigator measured the distance from the ground to the highest point in the arc of the rear left wheel well of the test vehicle.  Defendant offers no explanation for why the investigator decided to measure from the arc of the rear wheel well, presumably right above the rear shocks on the test vehicle, instead of from the rear bumper of the vehicle.

The investigator then loaded the test vehicle with a driver and five passengers, with the passengers apparently loading themselves in the rear cargo area.  Then, with the test vehicle still stationary, the investigator apparently observed the arc in the left rear wheel well had fallen two inches

9

1

2

**D.      The Court's Findings Were Not Contingent on Agent Diaz' Observations of the Load Vehicle.**

3      As a general matter, "[r]econsideration is appropriate if the district court (1) is presented

4  with newly discovered evidence, (2) committed clear error or the initial decision was manifestly

5  unjust, or (3) if there is an intervening change in controlling law." School Dist. No.1J, Multnomah

6  County, OR v. ACandS, Inc., 5 F.3d 1255, 1263 (9 th Cir. 1993).

7      Defendant's argument here hangs on the premise that the Court's findings of reasonable

8  suspicion and probable cause were dependant upon Agent Diaz' testimony that he observed the

9  load vehicle bounced and rode heavily.  They clearly were not.

10      As noted above, in setting forth its findings, the Court referenced numerous facts and

11  circumstances that established reasonable suspicion that criminal activity was afoot: (1) the

12  proximity of the Three Dollar Parking Lot from the international border; (2) the history of alien

13  smuggling activity in that parking lot; (3) the lack of fencing around the parking lot, and the many

14  bushes and vehicles there that allow for hiding places; (4) Agent Vasquez' observations of

15  Defendant walking through the shopping center parking lot to cross the street; (5) Agent Vasquez'

16  testimony that he observed Defendant speaking with two individuals within 1 to 2 meters of the

17  load vehicle for brief, unanimated conversation; (6) Agent Vasquez' observation that Defendant

18  then climbed into the driver's seat of the load vehicle and drove away; (7) Agent Vasquez'

19  testimony that, in attempting to contact the individuals near the load vehicle, one or both of them

20  fled; and (8) Nava's admission to Agent Vasquez that he is in the United States illegally. [See Ex.

21  A, 101-103.]

22      The Court then noted, *without yet referencing Agent Diaz' testimony*, that these factors

23  collectively created reasonable suspicion to stop the load vehicle. [See Ex. A., 103:12-14.]  Both

24  the evidence and the record therefore clearly demonstrate reasonable suspicion to stop the vehicle

25  irrespective of Agent Diaz' observations.

26

27

28                                                    10

Agent Diaz' observation that the load vehicle was heavily laden is likewise immaterial to the probable cause determination. After the load vehicle stopped, if Agent Vasquez' observations had not already established probable cause to search it, Agent Diaz heard rustling in the back of the vehicle as he approached it. Again, without regard to his observations of the load vehicle, once Agent Diaz heard rustling underneath the speaker boxes in the back of the vehicle, the agents had probable cause. Therefore, Defendant's experiment to test Agent Diaz' observations of the load vehicle is irrelevant, and the Court should deny the motion.

### E.    Defendant's Experiment Is Unreliable

Even if Agent Diaz' observations of the load vehicle were material to the Court's findings, however, Defendant's "new evidence" is inherently unreliable. It therefore offers nothing to impugn Agent Diaz' observations and testimony.

#### i.    Defendant Chose Not to Test the Load Vehicle

First, for reasons unexplained, Defendant chose not to test the actual load vehicle, a 2005 Nissan Pathfinder SE Four Wheel Drive, for his experiment. Instead he opted to test a different vehicle, a 2005 Nissan Pathfinder SE Offroad Four Wheel Drive. While Defendant acknowledges that the two vehicles have different payload capacities, Defendant offers no explanation for what structural differences between the two vehicles account for the differing payload capacities, nor for whether/how these differences would affect the rear view of the vehicle when weighted down.

More troubling, however, is the fact that Defendant makes no effort to determine and control for the general condition of the load vehicle as compared to test vehicle. Even on a basic level, Defendant offers nothing to demonstrate even that the mileage between the two vehicles is similar, much less that he has attempted to control for the wear on the shocks of the two vehicles. Absent such precautions, the experiment is inherently unreliable.

#### ii.    Defendant Did Not Measure From the Rear Bumper of the Vehicle

Second, apart from not using the load vehicle, Defendant did not measure the test vehicle from the area Agent Diaz was likely have been observing: the rear bumper. Instead, without

explanation, Defendant measured the test vehicle from the top of the arc of the rear left wheel well of the test vehicle – presumably the area  right above the rear shocks on the vehicle.

The problem in using the wheel well for measurement is fairly straightforward: it minimizes the height disparity Agent Diaz observed from the rear bumper of the load vehicle.  The rear wheel well rests just above the shocks and rear axle of the vehicle, both of which would minimize any height disparity in that particular location of the vehicle.  The rear bumper area, however, is positioned farther from the rear axle and shocks, which should render more pronounced height disparities, particularly if the weight is positioned toward the back of the rear cargo area.  Since Agent Diaz was likely watching the rear bumper in forming his observations, Defendant's recorded measurements have little bearing on what Agent Diaz actually observed while following the load vehicle on February 5, 2008.

### iii.    Defendant Only Tested the Vehicle While It Was Stationary

Finally, Defendant's experiment is undermined by the fact that he only tested a stationary vehicle.

At the hearing, Agent Diaz testified that he and Defendant were driving eastbound on Highway 94 when he observed the load vehicle bouncing and riding heavy.  Defendant's experiment, however, only measures the effect of a weighted rear cargo area on a stationary vehicle.  The experiment therefore does not and cannot capture the extent to which a weighted rear cargo area adds to the "bounce" or response of a load vehicle in motion as the driver negotiates bumps and turns on a highway.  This is a significant omission, since common sense suggests the effects of a weighted rear cargo area on a moving vehicle would be more pronounced and discernable than on a stationary one.  Defendant's experiment therefore cannot reasonably be relied upon to undermine Agent Diaz' observations and testimony.  The motion should therefore be denied.

//

//

1  **3.**      **THE MOTION FOR A BILL OF PARTICULARS SHOULD BE DENIED**

2          In his final motion Defendant now claims inadequate notice of the charges in the indictment

3  and moves for a bill of particulars.  Given the abundant discovery provided to Defendant here, as

4  well as the timing of the motion, the motion should be denied.

5          Federal Rule of Criminal Procedure 7(f) allows a defendant to move for a bill of particulars

6  "before or within 10 days after arraignment or at a later time if the court permits."

7          It is well-settled that "[t]he decision whether to grant a request for a bill of particulars is

8  directed to the trial court's discretion."  Will v. United States, 389 U.S. 90, 99 (1967).  In

9  determining whether a bill of particulars should be ordered in a specific case, a court should

10 consider whether the defendant has been advised adequately of the charges through the indictment

11 and all other disclosures made by the government.  United States v. Long, 706 F.2d 1044, 1054 (9th

12 Cir. 1983).  Where, as is the case here, the Government has provided the defendants with access

13 to all available discovery materials, a bill of particulars is not necessary.  "Full discovery will

14 obviate the need for a bill of particulars."  Id; United States v. Giese, 597 F.2d 1170, 1180 (9th Cir.

15 1979) (same).

16         The indictment here clearly puts defendant on notice that the Government is proceeding on

17 the bringing in charges under an aiding and abetting theory.  Giese, 597 F.2d at 1181 ("A defendant

18 is not entitled to know all the evidence the government intends to produce, but only the theory of

19 the government's case.").  Moreover, the Government has fully complied with its discovery

20 obligations. Giese, supra; Long, supra.

21         Additionally, Defendant was arraigned on the indictment on February 21, 2008.  In the four

22 months between his arraignment and this motion, Defendant has already availed himself of two

23 separate motions hearings.  Therefore, in addition to the ample discovery already produced, both

24 the intervening months between the indictment and this motion, and the extensive litigation during

25 those months, belie the notion of inadequate notice. The motion for a bill of particulars should be

26 denied.

27

28                                                          13

## III

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny Defendant's motions.

DATED: July 3, 2008.                              Respectfully submitted,

                                                 Karen P. Hewitt
                                                 United States Attorney

                                                 s/ AARON B. CLARK
                                                 AARON B. CLARK
                                                 DAVID D. LESHNER
                                                 Assistant U.S. Attorneys

                                                 Attorneys for Plaintiff
                                                 United States of America

14

1

UNITED STATES DISTRICT COURT

2

SOUTHERN DISTRICT OF CALIFORNIA

3

4     UNITED STATES OF AMERICA,                    )     Criminal Case No. 08-CR-0366-DMS
                                                    )
5                    Plaintiff,                     )
                                                    )     CERTIFICATE OF SERVICE
6          v.                                       )
                                                    )
7                                                   )
      JAMES HAYNES, III,                            )
8                                                   )
                     Defendant.                     )
9     _____            )

10         IT IS HEREBY CERTIFIED THAT:

11         I, Aaron B. Clark, am a citizen of the United States and am at least eighteen years of age.  My
business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

12

13         I am not a party to the above-entitled action.  I have caused service of the **UNITED STATES'
RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS** on the following parties by
electronically filing the foregoing with the Clerk of the District Court using its ECF System, which

14    electronically notifies them:

15         David M.C. Peterson, Esq.

16         I declare under penalty of perjury that the foregoing is true and correct.

17

18         Executed on July 3, 2008.

19                         /s/ Aaron B. Clark
                           AARON B. CLARK

20

21

22

23

24

25

26

27

28                                                  15