1  **DAVID M.C. PETERSON**
   California State Bar No. 254498
2  **MICHELLE BETANCOURT**
   California State Bar No. 215035
3  FEDERAL DEFENDERS OF SAN DIEGO, INC.
   225 Broadway, Suite 900
4  San Diego, California 92101-5008
   Telephone: (619) 234-8467
5  E-mail: david_peterson@fd.org
   michelle_betancourt@fd.org
6

7  Attorneys for Mr. Haynes

8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10                   **(HONORABLE DANA M. SABRAW)**

11  UNITED STATES OF AMERICA,              )   Case No. 08cr0366-DMS
                                           )
12              Plaintiff,                 )   Date:   July 25, 2008
                                           )   Time:   11:00 a.m.
13  v.                                     )
                                           )   **RESPONSE AND OPPOSITION TO**
14  JAMES HAYNES, III,                     )   **GOVERNMENT MOTIONS IN LIMINE TO:**
                                           )
15              Defendant.                 )   **(A) ALLOW ARGUMENT THAT DEFENDANT**
                                           )   **    NEED NOT ACT FOR PERSONAL**
16                                         )   **    FINANCIAL GAIN;**
                                           )   **(B) ADMIT CO-CONSPIRATOR**
17                                         )   **    STATEMENTS;**
                                           )   **(C) ADMIT RULE 404(B) EVIDENCE;**
18                                         )   **(D) EXCUSE WITNESSES; AND**
                                           )   **(E) RENEWED MOTION FOR RECIPROCAL**
19                                         )   **    DISCOVERY.**
    _____ )
20

21  TO:    KAREN P. HEWITT, UNITED STATES ATTORNEY;
           AARON CLARK, ASSISTANT UNITED STATES ATTORNEY;
22         DAVID LESHNER, ASSISTANT UNITED STATES ATTORNEY.

23         COMES NOW the accused, James Haynes, III, by and through his counsel, David M.C. Peterson,

24  Michelle Betancourt, and Federal Defenders of San Diego, Inc., and hereby files his response to the

25  government's motions in limine.  This reply is based upon the files and records of this case, the prior

26  pleading, and the attached memorandum of points and authorities.

27  //

28  //

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.

3

## STATEMENT OF FACTS[1]

4

Mr. Haynes hereby incorporates his statement of facts in his Motions In Limine.

5

## II.

6

## THE GOVERNMENT'S MOTIONS IN LIMINE

7    **A.    Motion to Allow Argument That Defendant Need Not Have Acted For Personal Financial Gain.**

8

9    The government requests the opportunity to argue that "Defendant may be liable under 8 U.S.C.

10    § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 so long as there is evidence that someone was to be paid to smuggle

11    the material witness into the United States and that Defendant aided and abetted the offense." Mr. Haynes

12    asks that the court deny the government's motion for two reasons.

13    The first is, that, simply stated, this argument is erroneous, because the jury must find not simply

14    evidence, but <u>evidence beyond a reasonable doubt</u> that "someone was to be paid to smuggle the material

15    witness into the United States."  It is presumed that the government is aware of their obligations, but it is

16    hoped that this court will ensure that the government argues the law properly, by requiring the government,

17    if it argues that "evidence" is sufficient to prove financial gain, be required to state that what is required

18    is "evidence beyond a reasonable doubt."

19    Second, and more importantly, however, the government's argument elides the dual intent

20    requirements in the elements of the "brings-to" offenses, and thereby misstates the law with its argument.

21    Therefore, as stated by the government in its motion in limine, this argument should be precluded.

22    **(1)    The Government Must Prove The Requisite Specific Intent of the Principal.**

23    The government must first bring evidence that a principal had the <u>specific intent</u> to gain financially

24    from the transaction.  <u>See</u> <u>United States v. Munoz-Contreras</u>, 208 F.3d 223 (9th Cir. 2000) (unpublished

25

26    ─────────────────

[1] The incorporated statement of facts is based on the probable cause statement and limited discovery

27    provided by the government.  Mr. Haynes in no way admits the truth of these facts nor their accuracy as

cited in these motions.  Further, he reserves the right to take a position contrary to the following statement

28    of facts at the motions hearing and at trial.

decision) ("'commercial advantage or private financial gain,' is an aggravating circumstance that elevates the offense to a felony, and for which proof of criminal intent is required") (citing United States v. Barajas-Montiel, 185 F.3d 947, 951, 953 (9th Cir. 1999)); see also United States v. Montes-Ochoa, 215 F.3d 1334 (9th Cir. 2000) (unpublished decision) (same).  That is, the government must produce evidence beyond a reasonable doubt that a principal acted with the specific intent to personally gain financially from the transaction.  The above-cited cases, while non-binding, are illustrative of how § 1324(a)(2)(B)(ii) has been interpreted.  The specific intent requirement flows from the plain language of the statute, which requires that a principal have the "purpose of commercial advantage or private financial gain."  See e.g., Salviejo-Fernandez v. Gonzales, 455 F.3d 1063, 1067 (9th Cir. 2006) (emphasis added) (noting that generally, "purpose" equates with specific intent, and "knowingly" with general intent); see also United States v. Gracidas-Ulibarry, 231 F.3d 1188, 1196 (9th Cir. 2000) ("purpose" is the highest of four levels of culpable states of mind: purpose, knowledge, recklessness, and negligence, and generally equates with specific intent) (citing United States v. Bailey, 444 U.S. 394, 405 (1980)).  Thus, to the extent the government wants to argue the law to the jury, it should not be allowed to ignore the fact that it must prove as to the alleged principal or principals beyond a reasonable doubt the "highest of four levels of culpable states of mind": purpose.  Gracidas-Ulibarry, 231 F.3d at 1067.

### (2)     The Government Must Prove the Same Mental State of the Aider And Abetter.

The government must do more than prove the specific intent of the principal, however.  To argue that Mr. Haynes is liable under an aiding and abetting, theory, the government must prove beyond a reasonable doubt that Mr. Haynes acted with the same level of intent as the principal.  See e.g., United States v. Sayetsitty, 107 F.3d 1405 (9th Cir. 2001) (aider and abettor must have same intent as the principal); United States v. Gaskins, 849 F.2d 454, 459 (9th Cir. 1988) ("the intent regarding the underlying substantive offense required to convict a defendant as an aider and abettor is the same intent necessary to convict him as a principal.") (citing United States v. Andreen, 628 F.2d 1236, 1245 (9th Cir. 1980)).  Simply put, this means that the government must bring evidence to prove beyond a reasonable doubt that Mr. Haynes had the specific intent that someone gain financially from his alleged actions.  The government cannot elide these crucial mens rea arguments by stating simply that "there is evidence someone was to be paid to smuggle the material witnesses into the United States."  That "someone" must have had the requisite

3

specific intent to gain financially, and Mr. Haynes must have shared that intent. Thus, to the extent the government's argument misstates and confuses the law of both 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2, it should be precluded.

**B.    The Court Should Deny The Government's Motion To Admit Alleged Co-Conspirator Statements.**

The Government states that it "will elicit testimony from the material witnesses concerning their smuggling arrangements and statements made to them by the foot guide who led them from Mexico into the United States and loaded them into Defendant's vehicle." This request to the court should be denied for the following reasons.

**(1)    Some Of The Testimony The Government Intends To Elicit Would Be In Violation of Rule 602.**

To the extent the government intends to elicit testimony concerning smuggling arrangements from Jesus Nava-Montenegro, that testimony is in plain violation of Federal Rule of Evidence 602. Rule 602 states that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Mr. Nava-Montenegro has already stated under oath that he has no personal knowledge of whether anyone was going to pay for him to be smuggled or not:

| | |
|---|---|
| Agent Diaz: | So, uh, how much were they going to charge your mother? |
| Nava-Montenegro: | I wasn't aware how much – |
| Agent Diaz: | But they were going to charge her something? |
| Nava-Montenegro: | I think so, but I wasn't aware how much they were going to charge her. |
| Agent Diaz: | Okay. But, that, one must believe that obvio-, that they were obviously going to charge her something, or do you think it was going to be for free? |
| Nava-Montenegro: | *I don't know.* |

See Excerpt of Sworn Statement of Jesus Francisco Nava-Montenegro to Agent Diaz, attached hereto as Exhibit A (emphasis added). Whether or not it was "obvious" to Agent Diaz, his interrogation of Mr. Nava-Montenegro certainly establishes that Mr. Nava-Montenegro had no personal knowledge of the smuggling arrangements beyond the bare fact that his mother made them. Specifically, he has no personal knowledge of whether there was any financial aspect to the alleged arrangements. If the government seeks to prove any financial element, they must do so through a witness with personal knowledge. Here, the government could put either Mr. Nava-Montenegro's mother or the person with whom she made the arrangements on

//

4

1    the stand.  Putting Mr. Nava-Montenegro on the witness stand to testify to what he has already stated he

2    has no personal knowledge of would be a plain violation of Rule 602.

3         This is not the only problem with the government's intent to introduce hearsay statements through

4    the material witnesses.

5         **(2)    The Statements The Government Seeks To Introduce Are Hearsay.**

6         Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing,

7    offered in evidence to prove the truth of the matter asserted. Fed.R.Evid. 801(c).  The government intends

8    to offer statements through the material witnesses made by individuals other than the material witnesses

9    for the truth of the matter asserted, namely, that those individuals had the specific intent to gain financially

10   by smuggling the material witnesses into the United States.  The only way in which the government is

11   excepted from bringing the witnesses to court is if, under the co-conspirator exception they are found not

12   to be hearsay.  The government bears the burden of showing this, and they have not done so.  United States

13   v. Silverman, 861 F.2d 571, 577 (9th Cir.1988) ("Coconspirators' statements are admissible if the

14   government can show by a preponderance of the evidence the existence of a conspiracy and the defendant's

15   connection to that conspiracy"); see also United States v. Crespo De Llano, 838 F.2d 1006, 1017 (9th Cir.

16   1987).  Unless and until they do so, these statements are hearsay, plain and simple.  As hearsay, and their

17   introduction would violate not only Rule 802, but also Mr. Haynes' constitutional right to confront

18   witnesses against him.  See U.S. CONST., AMDT. VI; Crawford v. Washington, 541 U.S. 36 (2004).

19        **(3)    The Statements Are Not Co-Conspirator Statements**.

20             **(a)    The Government Has Not Shown A Conspiracy Existed.**

21        The government's only claim of evidence that a conspiracy existed is based upon "the statements of

22   the material witnesses" as well as "the facts and circumstances surrounding Defendant's apprehension."

23   It has not put these statements before the court, and thus the court does not have sufficient information to

24   determine that a conspiracy existed.  These conclusory statements are not evidence, which is what Rule

25   801(d)(2)(E) requires.  Thus, as an initial matter, the government has provided the court with no evidence

26   that a conspiracy existed.

27        Second, the government cares not to distinguish between the two charged offenses for which the

28   alleged conspiracy might exist. This distinction is important, in light of the Ninth Circuit's en banc decision

1    in <u>United States v. Lopez</u>, 484 F.3d 1186 (9th Cir. 2007) (Congress established a distinction "between

2    bringing an alien 'to' the United States and transporting one already inside the country").  The government

3    has provided no evidence of a conspiracy to transport within the United States, or that the statements they

4    seek to admit were made in furtherance of such a conspiracy.  Thus, any conspiracy to transport has not

5    been established.

6        In addition, the government has not brought forth any evidence of a conspiracy to "bring  to" the

7    United States.  This is critical, because before any statements regarding personal financial gain can be

8    made, the government must establish a <u>conspiracy</u> to "bring aliens to."

9        To the extent the government relies on statements it intends to introduce, such evidence, while

10   relevant to a determination, is insufficient on its own to establish a conspiracy.  <u>United States v.</u>

11   <u>Matta-Lopez</u>, 73 F.3d 371 (9th Cir. 1995) ("because coconspirator statements are presumptively unreliable,

12   <u>this court requires evidence of the conspiracy</u> [and the defendant's connection to it] <u>that is independent of</u>

13   <u>the coconspirator statements</u>") (emphasis added).  The government has not provided any independent

14   evidence of the conspiracy, aside from its claim that it will introduce co-conspirator statements.

15       **(b)    The Government Has Provided No Evidence That Mr. Haynes Was A Part Of
           Any Conspiracy**.

16

17       More importantly, the government has not, and will not be able to, establish that Mr. Haynes was

18   a part of either a conspiracy to transport or a conspiracy to bring to.  The material witnesses all stated that

19   they either could not recognize Mr. Haynes or could only recognize him based upon him being present with

20   them when they were arrested.  This circuit has long required evidence independent of the statements

21   themselves that the accused is connected to a conspiracy before co-conspirator statements may be admitted

22   against them.  <u>United States v. Silverman</u>, 861 F.2d 571 (9th Cir. 1988).  Thus, the statements by the

23   material witnesses—the only proposed non-hearsay declarants with regard to the conspiracy—do not and

24   cannot connect Mr. Haynes to the conspiracy.  The government does not address whether it has evidence

25   that Mr. Haynes was a part of the conspiracy because it does not.  They simply state that "[a]lso

26   participating in the conspiracy were other individuals in Mexico, including the foot guide, as well as

27   Defendant, whose role in the conspiracy was to transport the material witnesses within the United States."

28   Before relying on any alleged co-conspirator statements, the government must make more than a bald

1    assertion that Mr. Haynes was involved in a conspiracy, they must prove it by a preponderance of the

2    evidence.  They have not done so.

3         With regard to the conspiracy to "bring to," which must be established before evidence of alleged

4    co-conspirator statements can come in, the government simply has <u>no</u> evidence that Mr. Haynes was a part

5    of a conspiracy to "bring to" for financial gain.  "Preparation to undertake the transporting of an illegal alien

6    within the United States. . . does not by itself necessarily establish intent to aid a "brings to" offense.  <u>U.S.</u>

7    <u>v. Singh</u>, 2008 WL 2762441, 7 (9th Cir. 2008).  The government's alleged conspiracy to bring to is simply

8    different than a conspiracy to transport, and to the extent the co-conspirator statements relate to a

9    conspiracy to "bring to," the government must prove by a preponderance that Mr. Haynes was a part of a

10   conspiracy to "bring to."

11        Even the government acknowledges that, if their argument is true that there was a conspiracy, Mr.

12   Haynes' "role  in the conspiracy was to transport the material witnesses within the United States."  Thus,

13   the government's <u>own claim</u> about the evidence is that it shows that Mr. Haynes was a part of a conspiracy

14   to transport within the United States.  The Ninth Circuit has repeatedly distinguished between "transport"

15   and "brings-to" offenses.  <u>See</u> <u>Lopez</u>, 484 F.3d 1186; <u>United States v. Singh</u>, --- F.3d ----, 2008 WL

16   2762441 (9th Cir. 2008) (evidence was sufficient to convict defendant of "bringing to for financial gain"

17   based upon numerous facts adduced at trial, including evidence that in the hours before the offense, "Singh

18   sought smuggling work, sealed a deal on the arrangements for the smuggling, including a return of the false

19   passport that could be used, and agreed to assist fulfilling the smuggling contract for $2000 by traveling

20   with Patel to New York.").  The Ninth Circuit's very recent decision in <u>Singh</u> demonstrates, on a sufficiency

21   standard, what factors could be deemed sufficient to find a conspiracy.  For example, the government noted

22   evidence that the defendant in <u>Singh</u> 1) engaged in "preparatory and planning activity in relation to a

23   'bringing to' offense;" 2) had, through a telephone call, established "a nexus between [the defendant's]

24   preparatory and collaborative work and the events related to [the material witness];" and 3) strong evidence

25   of an agreement to bring a passport (the instrumentality used to effectuate the brings-to offense) back to

26   Canada after completion of the transport.  All of this evidence was sufficient to show that he aided and

27   abetted.

28   //

1    Before the court admits proffered "co-conspirator statements" about a "brings-to" offense, it must

2    establish that Mr. Haynes was a part of a conspiracy to bring to.  The government has not provided any

3    such evidence to the court.

4              **(c)    The Government Has Not Shown The Statements Were Made During The**
                **Course of And In Furtherance of a Conspiracy.**

5

6    The government has made no indication of what the statements it seeks to introduce will consist of,

7    and thus, they have not proven that they were made during the course of and in furtherance of the

8    conspiracy.  A broad ruling that any statements by any people about "smuggling arrangements" may be

9    admitted would be unwarranted and premature, given that the court and Mr. Haynes do not yet know what

10    the statements were, whether they were made in furtherance of a conspiracy to bring to or a conspiracy to

11    transport, or who the statements were made by.

12              **(d)    The Court Should Hold a Hearing Outside the Presence of a Jury Before**
                **Admitting the Statements.**

13    While the court may in its discretion conditionally admit <u>any</u> evidence, it would be extremely

14    difficult and dangerous to conditionally admit evidence of the type sought to be introduced by the

15    government.  There is no indication yet what the statements were, who made them, or whether they were

16    made in furtherance of a conspiracy to bring to or a conspiracy to transport.  Without these basic questions

17    answered, introduction prior to a hearing under <u>Bourjaily</u>.  Mr. Haynes respectfully requests a pre-trial

18    hearing on the admissibility of any alleged co-conspirator statements, should the court be inclined to grant

19    the government's motion.

20              **(4)    Before Admitting The Statements, This Court Should Conduct The Balancing Test**
                **Required By <u>Ohio v. Roberts</u>.**

21

22    While it is an open question, this court should make a determination of reliability of the out-of-court

23    statement under <u>Ohio v. Roberts</u>,  448 U.S. 56, 66 (1980),[2] this court should do so.  The court should do

24    so because "out-of-court statements are presumptively unreliable." <u>United States v. Silverman</u>, 861 F.2d

25    571, 578 (9th Cir. 1988).  Before admitting a presumptively unreliable statement, this court should follow

26    _____

27    [2] <u>United States v. Weiland</u>, 420 F.3d 1062 (9th Cir. 2005) ("If the evidence is non-testimonial, there is
     uncertainty as to whether the "indicia of reliability" or firmly rooted hearsay exception test enunciated in

28    <u>Ohio v. Roberts</u> survives <u>Crawford</u>) (internal citations omitted).

1  sound judicial practice of many years and make a determination of reliability <u>before</u> allowing the statement

2  to be introduced as evidence to the jury.

3  **C.    The Court Should Exclude The Government's Proposed 404(b) Evidence.**

4  The government has not met its high burden in showing that statements are admissible under 404(b)'s

5  exception.

6  **(1)    The Government Has Articulated *No* Evidential Hypothesis Of Admissibility.**

7  With regard to both alleged incidents, the government has alleged no evidential hypothesis, as

8  required by binding Ninth Circuit precedent.  <u>United States v. Mermanesh</u>, 689 F.2d 822, 830 (9th Cir.

9  1982) ("the government must articulate precisely the evidential hypothesis by which a fact of consequence

10 may be inferred from other acts evidence").  Despite having several months to provide a <u>precise evidential</u>

11 <u>hypothesis</u>, the government has to date only stated that the proposed 404(b) is "material to the issues of

12 knowledge, intent, plan, identity and absence of mistake."  This laundry list obscures any evidential

13 hypothesis, and by its nature prevents the court from identifying any precise evidential hypothesis.

14 Moreover, the government has not stated how "a fact of consequence may be inferred from other acts

15 evidence."  There is simply no link made by the government, and therefore the evidence <u>must</u> be precluded

16 under <u>Mermanesh</u>, 689 F.2d at 830.

17 **(2)    The Government Has Not Satisfied The Other Requirements Of Admissibility.**

18 **(a)    The evidence does not prove a material element of the offense.**

19 The government has not stated what material element of the offense it intends to apply either

20 proffered incident to; instead they simply say that the "Ninth Circuit has upheld the admission of evidence

21 of prior arrests and convictions for transporting illegal aliens to establish a defendant's knowledge and

22 intent."  <u>See</u> Government's Motions In Limine, Docket No. 37, filed 06/02/2008, at 9.  Because it has

23 happened before does not mean it happens in every case.  Indeed, this court should make a case-specific

24 determination, rather than accepting an assertion that because prior apprehensions have been admitted to

25 prove knowledge and intent before, it should do so.  The government must articulate precisely <u>how</u> the

26 prior apprehensions prove a material element of the offense.

27 Indeed, if the government's evidential hypothesis is that the alleged prior apprehensions prove

28 knowledge, "[i]n order to admit evidence concerning other 'bad acts,' the government must prove 'a logical

1    connection between the knowledge gained as a result of the commission of the [other] act and the

2    knowledge at issue in the charged act."  United States v. Vizcarra-Martinez, 66 F.3d 1006, 1014 (9th Cir.

3    1995); see also United States v. Mayans, 17 F.3d 1174, 1181-82 (9th Cir. 1994) ("When the government's

4    theory [of admissibility] is one of knowledge-as here-this court has emphasized that the government must

5    prove a logical connection between the knowledge gained as a result of the commission of the prior act and

6    the knowledge at issue in the charged act").

7                    **(b)      The Proposed 404(b) Is Not Similar To The Charged Conduct**

8         The government without explanation simply states that "[d]efendant's prior alien smuggling

9    endeavors are similar to the instant offense."  Such conclusory statements are not sufficient for the

10   government to meet its burden of admissibility.  Each alleged apprehension is addressed in turn.

11        **October, 2006**

12        According to the **two pages** of discovery provided to defense counsel by the government, the

13   October 2006 apprehension involved not a transportation within the United States, but a stop at the San

14   Ysidro Port of Entry.  Rather than try and explain why the offense is similar, the government leaves its

15   claim at one sentence to obscure the fact that this proposed 404(b) was (a) a different offense; (b) involving

16   not a compartment but a trunk; (c) in a different place, i.e., a port, rather than inside the United States.

17   Indeed, bringing a vehicle into the country that later turns out to have individuals in the trunk is completely

18   different than even what the government alleges occurred here, namely that Mr. Haynes' "role in the

19   conspiracy was to transport the individuals within the United States."  Brings-to and transport have very

20   different elements, and arise under different factual scenarios, meaning that a bare assertion that they are

21   "similar" cannot stand.

22        **November, 2007**

23        The **three pages** of discovery provided by the government again serve only to show that the act was

24   dissimilar, not that it was similar.  As an initial matter, the November, 2007 arrest involved a passenger,

25   meaning that there was another individual who may have been completely responsible for the fact that there

26   were individuals.  Unfortunately, this cannot be ascertained because the government either failed to

27   interview the passenger, Michael Felix Mayfield, or has not provided the statement of the passenger at the

28   time of the arrest.

1    Further, however, the act is dissimilar because there is no admissible evidence that the individuals

2    in the trunk were aliens.  All that the report contains is the two individuals' statements that they were aliens.

3    This evidence is insufficient to show that Mr. Haynes was transporting aliens in the prior case.  Individuals

4    may try to get through a checkpoint without being seen for many reasons: they may have warrants out for

5    their arrest, or they may be United States citizens seeking to keep their whereabouts unknown.  Once

6    apprehended, it may be that they have a self-interest in saying that they are not United States citizens in

7    order to avoid detection.  The government has provided no evidence other than the individuals' statements

8    as to their alienage in order to prove this fact.  Because these statements would be inadmissible at trial, the

9    introduction of the fact that two individuals were found in a trunk at a checkpoint will simply confuse the

10    jury.

11    Finally, this checkpoint stop, well within the United States, was completely different than a stop near

12    the border.  The government has provided no admissible evidence of whether the individuals were aliens,

13    how they got into the car on November 28, whether Mr. Haynes knew they were there, whether Mr.

14    Mayfield in fact had Mr. Haynes drive without telling him what was happening.  Thus, the case was not

15    only different, but the differences in the cases will obscure the issues for the jury, and the jury will treat

16    the November 28, 2007 apprehension as simple 404(b).

17    **(c)    There Is Insufficient Evidence of The Alleged Prior Acts**

18    The government has at this point provided defense counsel with **five pages** of discovery for the prior

19    arrests.  Each occurred many months ago, and the government has represented to the court as to defense

20    counsel that there is no additional documentary evidence regarding these apprehensions.  These five pages

21    simply do not provide sufficient evidence that the prior acts were committed.  However, as noted with

22    regard to the alleged November 28, 2008 incident, the government will be able to provide **no admissible**

23    **evidence** that (1) Mr. Haynes knew the individuals were there; (2) the individuals were aliens; (3) the

24    individuals were seeking to further their ingress into the United States; (4) the third party was not the

25    responsible one.  As such, the November 28, 2008 incident should be precluded because there is

26    insufficient evidence of anything, and even presuming the government provides evidence to back up the

27    assertions in the report, there is still no evidence other than a stop involving Mr. Haynes at a checkpoint

28    and the discovery of humans in the trunk.  That bare evidence is not sufficient.

**(4)      The Proposed Evidence Should Be Excluded Under Rule 403.**

The two proposed 404(b) incidents, particular when introduced in tandem, violate Federal Rule of Evidence's balancing test, as any "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues . . . or needless presentation of cumulative evidence." Fed.R.Evid. 403.

First, all statements of unavailable witnesses will have to be excluded under <u>Crawford</u>.  Absent those statements, the jury will be confused as to why evidence of humans in trunks is introduced for any purpose other than character/propensity.

Second, as the government has not indicated <u>what</u> it intends to prove with the 404(b), it is impossible to say that the probative value outweighs the prejudicial effect.  If the government, for example, continues to argue that the evidence proves "knowledge, intent, plan, identity and absence of mistake," the prejudice will clearly outweigh any probative value as to those five issues.

**(5)      Should The Court Be Inclined To Admit Either 404(b) Incident, It Is More Properly Admitted As Impeachment**

The government's laundry list of evidential hypotheses fall far short of the requirement in <u>Merhmanesh</u>, 689 F.2d at 830.  If the government perhaps reserves to use as impeachment if Mr. Haynes puts "knowledge, intent, plan, identity or [ ] mistake" at issue, the evidence may be less confusing to the jury, more probative, and less prejudicial.  However, in its case-in-chief the evidence is simply prejudicial under 403, and inadmissible under the strictures of 404(b).

**D.      <u>The Government's Motion To Exclude Testifying Witnesses.</u>**

Mr. Haynes has no objection to the exclusion of percipient defense witnesses, provided that it also excludes percipient government witnesses from the courtroom.  In addition, defense counsel requests under Rule 615 that all witnesses, including government witnesses, be asked not to discuss courtroom events, their own, or each other's testimony during the course of the trial, as this has been recently noted by undersigned counsel to be a problem in this courthouse.

**E.      <u>Reciprocal Discovery.</u>**

Defense counsel will comply with their discovery obligations.

//

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.**

**CONCLUSION**

For these and all the foregoing reasons, the defendant, Mr. Haynes, respectfully requests that this Court deny the government's motions in limine and grant any and all other relief deemed proper and fair.

Respectfully submitted,

_/s/ David M.C. Peterson_
Dated: July 21, 2008                **DAVID M.C. PETERSON**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Haynes

1

**<u>CERTIFICATE OF SERVICE</u>**

2

3         Counsel for Defendant certifies that the foregoing is true and accurate to the best information and

4   belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

5         Courtesy Copy to Chambers

6         Copy to Assistant U.S. Attorney via ECF NEF

7         Copy to Defendant

8   Dated:  July 21, 2008                         /s/ DAVID M. PETERSON
                                          Federal Defenders of San Diego,
9                                         225 Broadway, Suite 900
                                          San Diego, CA  92101-5030
10                                        (619) 234-8467  (tel)
                                          (619) 687-2666  (fax)
11                                        david_peterson@fd.org (email)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28